Alexandria

NEIL A. FORDHAM

v.

COMMONWEALTH OF VIRGINIA

No. 0464-90-4

Decided October 15, 1991

236

COUNSEL

Gary H. Smith (Clark S. Kall, on briefs), for appellant.

Janet F. Rosser, Assistant Attorney General (Mary Sue Terry, Attorney General; Janet F. Rosser, Assistant Attorney General, on brief), for appellee.

OPINION

MOON, J.—Neil Fordham was convicted by a jury of murder in the first degree and the unlawful use and display of a firearm while committing murder in the first degree. He contends that the evidence was insufficient to support his conviction because the Commonwealth did not prove he was present at the scene of the crime when it allegedly occurred. He also argues that the testimony of a key Commonwealth's witness was inherently incredible. We disagree and affirm the convictions.

On appeal we construe the evidence in the light most favorable to the Commonwealth, granting to it all inferences fairly deducible therefrom. *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

On November 27, 1988, appellant and Mario Rojas went to a residence at 1105 Queen Street in Alexandria, Virginia, the home of Kristi Brown, where Kristi's uncle, Keith Williams, was visiting.[1] Rojas introduced appellant to Williams. Williams testified that he saw Rojas carrying a semi-automatic weapon and saw ap-

---

[1] Kristi Brown testified that appellant's brother, Kurt Fordham, arrived at 1105 Queen Street when Rojas and appellant arrived. However, her testimony conflicted with Williams' testimony and there was no other reference to Kurt Fordham in the record.

pellant with "something that may have looked like the handle of a gun" but that he "couldn't see a weapon because it was too dark." While in the house, the appellant kept his hands in his jacket. Williams described the jacket as "overly large" considering the warm weather outside. It was so warm that the detective investigating the incident at 4:30 a.m. did not feel the need to wear more than a sport coat.

When Rojas and appellant left the residence, they exited through the back door into an alley a short distance from the scene of the shooting. Williams accompanied them outside and testified, "I said 'Where's the car?' you know, as I was walking out and they said, 'That's all right. We'll find it.'" Rojas asked Williams which street the alley exited into. Williams told them and testified that Rojas and appellant went west toward Fayette Street, the direction they would have taken to reach the corner of 1113 Queen Street from the alley. Williams then immediately reentered the dwelling and went upstairs to go to the bathroom. He used the toilet, flushed it and washed his hands before walking back down the stairs. While on the stairs, he heard shots fired outside. Williams ran outside and found Daryll and Dino Belk lying shot on the sidewalk and street at 1111 Queen Street. Dino, who received eleven gunshot wounds, survived, but Daryll died as a result of nine gunshot wounds.

The three Queen Street addresses mentioned above are all town houses fronting directly on the sidewalk within the same block. The alley runs parallel to Queen Street behind the residences. It extends from Fayette Street to Henry Street and access from the alley to Queen Street is possible through the vacant lot beside 1113 Queen Street. The distance between the furthermost corners of 1105 Queen Street and 1113 Queen Street is about 130 feet, the width of each town house lot being about twenty-six feet. From the alley to the corner of 1113 Queen Street, the distance is about 130 feet. Investigator Daryll Scott testified that it takes approximately one minute to walk the distance from the gate at 1105 Queen Street down the alley toward Fayette Street and through the vacant lot to the corner of 1113 Queen Street.

Kristi Brown testified that, shortly after the time she arrived at 1105 Queen Street in the early morning hours, Dino Belk knocked on the door and asked for Tina Williams, his girlfriend. Dino testified that, when he stopped at 1105 Queen Street to see Tina,

Tina told him to wait outside until she got her coat. Tina Williams was still inside 1105 Queen when the shooting took place. Kristi Brown testified that, after she walked away from the door after Dino knocked, Rojas and Fordham were no longer in the house. Dino testified that he walked toward 1111 Queen Street to talk to his brother Daryll, who was coming out of their residence at 1111 Queen Street. Dino and his brother walked toward the corner because they heard fighting on Fayette Street. Dino also testified that as they walked they thought they saw people peeking around the corner at 1113 Queen Street. When they got to the corner, two light-skinned men jumped out and began shooting.

Dino identified Rojas as one of two gunmen, but did not identify appellant, who was not identified as the second gunman at trial. Dino's description of the second gunman being "light-skinned" also describes the appellant's complexion. Dino testified that both assailants fled the scene toward Henry Street. A crowd gathered and an unidentified person began going through Daryll's pockets.

■ "[E]ach of the five circumstances of time, place, motive, means, and conduct" need not be proved beyond a reasonable doubt. *Cantrell v. Commonwealth*, 229 Va. 387, 397, 329 S.E.2d 22, 29 (1985):

> What our circumstantial evidence cases do stand for is the proposition that those circumstances which *are* proved must each be consistent with guilt and inconsistent with innocence, and that they must also be consistent with each other, that is to say, they must *concur* in pointing to the defendant as the perpetrator beyond a reasonable doubt.

*Id.* at 398, 329 S.E.2d at 29 (emphasis in original).

The record reveals that evidence was presented establishing that the appellant and Rojas appeared to be carrying guns, that when appellant and Rojas departed the residence they acted and talked as if they planned to remain together, that their departure coincided with Dino Belk's arrival at the residence, and that shots were fired shortly after Rojas and the appellant left the house. The shots were fired in the time it took Mr. Williams to go upstairs to the bathroom and begin descending the stairs.

■ We hold that the evidence is sufficient to support the convictions. It is well settled that it is in the "province of the jury to determine what inferences are to be drawn from proved facts, provided the inferences are reasonably related to those facts." *Inge v. Commonwealth*, 217 Va. 360, 366, 228 S.E.2d 563, 568 (1976). It is also within the jury's discretion to determine whether the testimony of witnesses is credible. The jury could have reasonably believed the testimony of Mr. Williams and could reasonably infer, from the unbroken chain of necessary circumstances, that the appellant was located within a short distance of the victims shortly before the shootings; that the appellant had the means to commit the crime; that his conduct before the crime was consistent with guilt and inconsistent with innocence; and that all of these factors concur in pointing to the appellant as the gunman accompanying Rojas.

Appellant suggests by way of hypothesis that in the time after Rojas and appellant left the residence and before the time of the shooting, which was the time it took Williams to go to the bathroom, appellant left Rojas and another person joined Rojas in the shooting. This suggestion is possible, but there is no evidence to support such an hypothesis.

The appellant is mistaken in stating that the Commonwealth, to sustain its burden, must exclude the possibility that others may have committed the crime. The Commonwealth is only required to exclude hypotheses of innocence that flow from the evidence, and not from the imagination of the accused's counsel. *See Turner v. Commonwealth*, 218 Va. 141, 148, 235 S.E.2d 357, 361 (1977); *Avent v. Commonwealth*, 209 Va. 474, 480, 164 S.E.2d 655, 659 (1968); *See also Williams v. Commonwealth*, 234 Va. 168, 176, 360 S.E.2d 361, 366 (1987), *cert. denied*, 484 U.S. 1020 (1988). Hypotheses not flowing from the evidence must be rejected.

Appellant contends that his convictions cannot stand because the testimony of Keith Williams, the key Commonwealth's witness, was inherently incredible. Williams testified at Rojas' trial that he did not see the two men with any firearms. Williams also acknowledged at appellant's trial that he had previously testified under oath at a preliminary hearing and at Rojas' trial, that he had seen no weapons on the night in question. Williams also testified that his memory of the events was better at the time of appellant's trial than at the time of his earlier testimony. He also con-

ceded that he was not incarcerated at the time of his earlier testimony when he testified that he saw no guns, but stated that he was in jail at the time of appellant's trial. Williams testified at appellant's trial that he had not been promised any leniency in exchange for his testimony at appellant's trial. Williams also intimated that his testimony had changed on these issues because he had previously feared for his life and had been afraid to tell the truth at the time of his earlier testimony.

■ It is true that Williams' prior testimony was inconsistent with his testimony at appellant's trial. However, this alone does not make the testimony inherently incredible. Significantly, Williams' trial testimony was not contradicted by other witnesses. Prior inconsistent testimony is a factor in determining the credibility of a witness, but it does not automatically render the witness' testimony incredible. *See Shelton v. Mullins*, 207 Va. 17, 22, 147 S.E.2d 754, 758 (1966). Inconsistent statements by a witness go to the weight and sufficiency of the testimony, not the competency of the witness. *Swanson v. Commonwealth*, 8 Va. App. 376, 379, 382 S.E.2d 258, 259 (1989). The credibility of the witnesses and the weight to be accorded their testimony lies wholly within the purview of the jury. *Mullis v. Commonwealth*, 3 Va. App. 564, 571, 351 S.E.2d 919, 923 (1987). Based upon this record, we cannot hold, as a matter of law, that Williams' testimony was inherently incredible.

Accordingly, the judgment appealed from is affirmed.

*Affirmed.*

Duff, J., and Bray, J., concurred.