COURT OF APPEALS OF VIRGINIA

Present: Judges Fitzpatrick, Overton and Senior Judge Hodges
Argued at Salem, Virginia

BRYAN KEITH JOHNSON

MEMORANDUM OPINION[*]
v.      Record No. 1819-94-3      BY JUDGE WILLIAM H. HODGES
SEPTEMBER 3, 1996
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ROANOKE COUNTY
G. O. Clemens, Judge

Mark D. Kidd (Osterhoudt, Ferguson, Natt,
Aheron and Agee, P.C., on briefs), for
appellant.

H. Elizabeth Shaffer, Assistant Attorney
General (James S. Gilmore, III, Attorney
General, on brief), for appellee.


Tried by a jury upon an indictment charging him with the

murder of Ralph Day, Bryan Keith Johnson (appellant) was found

guilty of voluntary manslaughter.  On appeal, appellant contends

that the trial court erred in (1) refusing to suppress both his

statement and the results of the examination of his shoes by the

police; (2) excluding the trial testimony of Dr. Conrad H. Daum,

appellant's psychiatric expert; (3) excluding the testimony of

toxicologist Richard McGarry; (4) refusing to grant a mistrial

because one of the jurors failed to reveal during voir dire her

employment as a dispatcher with a local police department; and

(5) refusing to set aside the verdict because the evidence was

insufficient to sustain the conviction.  Finding no reversible

error, we affirm the conviction.

"On appeal, we review the evidence in the light most

_____

[*]Pursuant to Code § 17-116.010, this opinion is not
designated for publication.

favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). So viewed, the evidence proved that on the afternoon of September 18, 1993, Michael Walker noticed two men wandering in the street in the vicinity of his Vinton apartment. Walker did not recognize the men, but later identified appellant as the younger of the two. Walker watched as the two men approached the door of a basement apartment nearby. It took several minutes for them to gain entry to the apartment. Suspecting foul play, Walker called the police. Corporal R. A. Thompson and Officer R. E. Meador responded to the call, spoke with Walker, and proceeded to the basement apartment to investigate at about 5:00 p.m.

Appellant answered the police officers' knock on the door of the apartment. Thompson asked if everything was "all right," and appellant said that there was a dead man inside. Thompson looked inside and saw a man, later identified as Day, in a reclining chair. Thompson entered the apartment, checked Day for a pulse, but found none. The apartment was in disarray. Bloodstains appeared on the floor and wall, and broken glass was on the floor. Other than appellant, the only person present was Isaac Turner, who was seated at the kitchen table. Turner appeared to have been beaten and his arm was bloody.

Meador took appellant outside. Appellant told Meador his name and admitted that the apartment was his. Appellant volunteered that Day was homeless and had been his best friend. Appellant asked if he was going to jail, and twice stated that he

did not "kill his buddy." Appellant said Day had fallen down numerous times that day and the preceding day. Initially, appellant told the police that Day had been in the chair since 7:00 that morning. Later, however, he said Day had been there for only twenty minutes before the police arrived.

Appellant appeared intoxicated, but was cooperative and "clear." At about 5:30 p.m., appellant's blood alcohol content (BAC) measured 0.40 percent in a preliminary breath test administered at the scene. The police arrested appellant for being drunk in public and transported him to the police station.

At 11:30 p.m., after appellant had been under arrest for about six hours, he was interviewed by Investigator Michael Stovall. Stovall advised appellant of his Miranda rights. Appellant said he understood his rights, signed a waiver form, and agreed to talk to the police.

Stovall then talked with appellant for about an hour. Stovall did not readminister the breath test because he thought that the alcohol already would have passed through appellant's system. Stovall felt that appellant was responsive to his questions and understood what was going on about him.

After discussing matters with Stovall, appellant gave a taped statement. In the statement, appellant admitted that he hit Day with his hands and feet. Appellant further stated that he was sober, that he knew what day of the week it was, and that he had consumed no alcohol since the police arrived at his apartment.

At the conclusion of the statement, appellant agreed to give

the police the shoes he was wearing.  Testing revealed traces of human blood on the soles and tops of the shoes.

The autopsy upon Day's body revealed extensive bruising of the head and chest.  Day had suffered two broken ribs, which punctured his left lung and caused the lung to collapse.  This injury caused Day's death.  The ribs had been broken by blunt force, consistent with Day having been stomped upon or kicked.  Unless Day had fallen against something, it was unlikely that the injury was caused by falling down stairs.

Turner testified that he, Day, and Jesse "Chief" Lewis were homeless and that appellant was their "drinking buddy."  On the morning of September 18, 1993, the four men were together at appellant's apartment drinking alcohol appellant had supplied.  They had been drinking together for about three days.  Although his memory was "patchy" and he passed out for a period of time, Turner remembered that, at some point that day, appellant had warned Day not to eat some food in the apartment.  Appellant left the apartment.  When he returned, the food was gone.  Appellant slapped Day, kicked him, and stomped on his chest as Day lay on the floor.  Turner told appellant to stop, but was afraid to intervene further because appellant had beaten him earlier.

Turner testified that someone picked up Day and placed him in the reclining chair.  Appellant resumed drinking.  When they later discovered that Day was dead, appellant said that he had not meant to kill Day, and asked what he was going to do.  Turner did not observe anyone but appellant kick or stomp upon Day.

Leonard Trout, appellant's cellmate after his arrest for

Day's murder, testified that appellant said he and Day had gotten into a fight over some food. Appellant admitted that he had kicked Day and stomped upon him, and said that "Chief" was involved in the fight. Afterwards, they put Day in the recliner and left the apartment to get some wine. When they returned they discovered Day was dead.

Appellant testified in his own behalf. He said that on September 18, 1993 he been on a two week drinking binge with Day, Turner, and Lewis. Finding themselves out of alcohol on the morning of September 18, they walked to a grocery store for more alcohol, and consumed it later at appellant's apartment. Appellant, Turner, and Lewis then went to a bar, leaving Day in the apartment. When they returned from the bar, they found Day on the floor. Appellant thought Day had simply passed out. Appellant and Lewis placed Day in the recliner. The group continued to drink for about thirty minutes until Lewis discovered that Day was dead.

Appellant testified that he did not remember fighting with Day and did not know who had hurt him. Appellant said he sometimes experiences blackouts when on a drinking binge. Appellant further stated that he did not recall talking to the police when they arrived at the apartment, and that he was drunk when he gave his statement to Stovall.

I.

At a hearing on the motion to suppress, Dr. Daum, a psychiatrist, testified that appellant was influenced by "some residual intoxication" when he made his taped statement to the

-5-

police.  Dr. Daum also testified that appellant's BAC could have been as low as 0.05 or 0.06 percent at the time of his interview with Stovall.

The standards to be applied in determining whether a statement was voluntary are well established.

> "Whether a statement is voluntary is ultimately a legal rather than factual question.  Subsidiary factual questions, however, are entitled to a presumption of correctness.  The test to be applied in determining voluntariness is whether the statement is the 'product of an essentially free and unconstrained choice by its maker,' or whether the maker's will 'has been overborne and his capacity for self-determination critically impaired.'  In determining whether a defendant's will has been overborne, courts look to 'the totality of all the surrounding circumstances,' including the defendant's background and experience and the conduct of the police . . . ."

Midkiff v. Commonwealth, 250 Va. 262, 268, 462 S.E.2d 112, 116 (1995) (citations omitted).

"'Statements made during a custodial interrogation and while intoxicated are not per se involuntary or inadmissible.'" Boggs v. Commonwealth, 229 Va. 501, 512, 331 S.E.2d 407, 415 (1985), cert. denied, 475 U.S. 1031 (1986) (citation omitted). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." Colorado v. Connelly, 479 U.S. 157, 165 (1986).  However, in situations where the accused has ingested intoxicants prior to his statement, the degree of police coercion necessary to render the statement involuntary may be lessened.

> The mental condition of the defendant is "surely relevant to [his] susceptibility to police coercion"; however, evidence of coercive police activity "is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." The amount of coercion necessary to trigger the due process clause may be lower if the defendant's ability to withstand the coercion is reduced by intoxication, drugs, or pain, but some level of coercive police activity must occur before a statement or confession can be said to be involuntary.

Commonwealth v. Peterson, 15 Va. App. 486, 488, 424 S.E.2d 722, 723 (1992) (citations omitted).

Appellant argues that this Court's decision in Peterson compelled the suppression of his statement and the results of the examination of his shoes. At the time the defendant in Peterson was questioned by the police, he was being transported to the hospital in an ambulance after having ingested cocaine. He was experiencing chest pains, blurred vision, and could not understand what was going on around him because of injuries he suffered when the police apprehended him. We found the evidence "supported the trial court's finding that the police authority, asserted when the defendant was especially susceptible, overbore his will and, thus, was coercive police activity rendering his statements involuntary and inadmissible." Id. at 488, 424 S.E.2d at 724. Cf. Goodwin v. Commonwealth, 3 Va. App. 249, 349 S.E.2d 161 (1986) (mentally retarded suspect's statement not involuntary despite evidence that he was intoxicated three hours before his interview with the police).

Here, the evidence supports the trial court's finding of an

absence of coercive police activity during the questioning of appellant. Although appellant's BAC had registered 0.40 six hours earlier, appellant's own evidence was that his BAC may have been as low as 0.05 or 0.06 when he gave his statement. During the interview, appellant told the police that he was sober. He appeared to understand what was going on about him, and he was responsive to Stovall's questions. Therefore, the evidence supports the trial court's determination that appellant voluntarily gave his statement and his consent to examine the shoes. The trial court did not err in denying the motion to suppress.

## II.

Before trial, appellant filed notice of his intention to present evidence that he was insane at the time of the offense. At trial, the defense sought to introduce the psychiatric testimony of Dr. Daum who had evaluated appellant. In a proffer of his testimony, Dr. Daum stated that appellant suffered from symptoms of alcohol dependence. At the time of the offense, appellant was alcohol dependant, which is classified in medical terms as a "disease of the mind." However, Dr. Daum could not say that at the time of the offense appellant did not know the difference between right and wrong or understand the consequences of his actions. He also could not testify that appellant was legally insane at the time of the offense, or that appellant was brain damaged from alcohol use. The trial court found Dr. Daum's testimony to be evidence of diminished capacity and excluded it.

"It is well settled that a defendant is presumed to be

-8-

legally sane until he proves to the satisfaction of the trier of fact that he was insane at the time of the offenses for which he is on trial." Boblett v. Commonwealth, 10 Va. App. 640, 651, 396 S.E.2d 131, 137 (1990). To establish an insanity defense, the accused must show that "he did not know the difference between right and wrong or that he did not understand the nature and consequences of his acts." Price v. Commonwealth, 228 Va. 452, 456, 323 S.E.2d 106, 108 (1984).

> For purposes of determining criminal responsibility a perpetrator is either legally insane or sane; there is no sliding scale of insanity. The shifting and subtle gradations of mental illness known to psychiatry are useful only in determining whether the borderline of insanity has been crossed. Unless an accused contends that he was beyond that borderline when he acted, his mental state is immaterial to the issue of specific intent.

Stamper v. Commonwealth, 228 Va. 707, 717, 324 S.E.2d 682, 688 (1985). Evidence which falls short of establishing an accused's insanity and is merely probative of his diminished capacity is not admissible. See Smith v. Commonwealth, 239 Va. 243, 259-60, 389 S.E.2d 871, 879-80, cert. denied, 498 U.S. 881 (1990); Bowling v. Commonwealth, 12 Va. App. 166, 174, 403 S.E.2d 375, 378-79 (1991).

Dr. Daum's proffered testimony, either alone or in conjunction with other evidence, did not establish that appellant was insane at the time of the offense. Although Dr. Daum stated that alcohol dependence was classified medically as a mental disease, he could not say that at the time of the offense appellant did not know the difference between right and wrong or

-9-

understand the consequences of his actions.  In the absence of such conclusions, Dr. Daum's testimony amounted to nothing more than evidence of appellant's diminished capacity at the time of the offense.  Accordingly, the trial court did not err in excluding it.

III.

At the conclusion of the Commonwealth's case-in-chief, the trial court granted appellant's motion to strike the evidence as to first degree murder, and the case proceeded upon a charge of second degree murder.  Subsequently, appellant sought to admit the testimony of Richard McGarry, a toxicologist.  In a proffer of his testimony, McGarry stated that increasing levels of alcohol in the bloodstream affect a person's judgment, coordination, and memory.  McGarry was able to testify about how much alcohol a person of appellant's size would have had to consume to reach a BAC of 0.40.  According to McGarry, six hours after that reading, that same person would have a BAC of 0.28 if he had consumed no more alcohol.

Appellant argued that McGarry's testimony was relevant to the jury's determination of the weight to give appellant's statement to Stovall, made six hours after his arrest.  While noting that portions of McGarry's testimony might be admissible, the trial court excluded McGarry's testimony entirely because the admissible and inadmissible portions of the testimony could not be separated.

Voluntary intoxication is a defense to first degree murder, but not to any lesser form of homicide.  Essex v. Commonwealth,

-10-

228 Va. 273, 281-82, 322 S.E.2d 216, 220 (1984). After the trial court granted in part appellant's motion to strike, evidence that he was intoxicated at the time of the offense was not relevant to negate any element of a lesser included offense of first degree murder.

However, the testimony of McGarry may have been relevant for other purposes. "Evidence is relevant . . . if it has any tendency to establish a fact which is properly at issue. When the probative value of evidence sought to be admitted outweighs any prejudicial effect, and no other objection is pertinent, the evidence is admissible." Wise v. Commonwealth, 6 Va. App. 178, 188, 367 S.E.2d 197, 202-03 (1988). "Any fact, however remote, that tends to establish the probability or improbability of a fact in issue is admissible." Wynn v. Commonwealth, 5 Va. App. 283, 291, 362 S.E.2d 193, 198 (1987).

When appellant sought to admit McGarry's testimony, the Commonwealth already had introduced appellant's statement to Stovall. In addition, appellant had testified that, contrary to portions of his statement to Stovall, he did not injure Day, did not know how Day had gotten hurt, and that he was drunk when he told Stovall otherwise. McGarry's testimony about the effects of alcohol on the human body could have strengthened appellant's contentions that he did not remember how Day was injured, did not remember talking with Stovall, and was intoxicated when he made his statement to the police. Thus, McGarry's testimony was probative evidence the jury could have considered in determining the weight to give appellant's statement to the police and his

testimony at trial.

Even if the exclusion of McGarry's testimony was erroneous, "error committed in the trial of a criminal case does not automatically require reversal of an ensuing conviction." Galbraith v. Commonwealth, 18 Va. App. 734, 742, 446 S.E.2d 633, 638 (1994).

> [N]on-constitutional error is harmless "when it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." "[A] fair trial on the merits and substantial justice" are not achieved if an error at trial has affected the verdict. Consequently, under Code § 8.01-678, a criminal conviction must be reversed unless "it plainly appears from the record and the evidence given at the trial that" the error did not affect the verdict. An error does not affect a verdict if a reviewing court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same.

Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc) (citations omitted).

As mentioned earlier, McGarry's proffered testimony would have corroborated appellant's own testimony and could have affected the jury's assessment of the reliability of appellant's statement. Had the jury rejected appellant's statement and believed his testimony that he did not know how Day was injured, there remained Turner's affirmative testimony that appellant, and no one else, beat Day. Moreover, while appellant was incarcerated and was not intoxicated, appellant confessed to Trout that he and Day had gotten into a fight over food and that

-12-

he had kicked and stomped upon Day during the fight.

The credibility of neither Turner's nor Trout's testimony would have been affected by that of McGarry. Thus, in light of this evidence, any error in excluding McGarry's testimony did not affect the verdict and was harmless.

IV.

During voir dire, the trial court asked the jurors as a group if "any of you all have any present family members who are working and occupied in law enforcement in any way?" The court also asked if the jurors had any relatives that had worked in law enforcement and if "anyone else [has] any law enforcement connections, any extended families or anything like that?" During this questioning, Juror Annette Hoge did not reveal that she was a dispatcher for the Salem Police Department. The jury list reported Hoge's occupation as "Salem Dispatcher."

During the presentation of appellant's evidence, appellant's attorney notified the court of Juror Hoge's occupation and moved for a mistrial. When questioned by the court, Hoge said she understood the voir dire questions as requesting information about family members and relatives, not the jurors themselves. Hoge said that she was not a sworn police officer, had no knowledge of the case other than what she had learned in the courtroom, and that her occupation would not affect her ability to decide the case fairly.

The only argument raised at trial in support of appellant's subsequent motion for a mistrial was that if appellant had possessed information about Hoge's occupation at the time of jury

selection, he might have exercised his peremptory strikes differently. The Court of Appeals will not consider arguments on appeal which were not presented to the trial court. Jacques v. Commonwealth, 12 Va. App. 591, 593, 405 S.E.2d 630, 631 (1991) (citing Rule 5A:18). Therefore, because the trial court was never given the opportunity to rule upon them, we will not consider appellant's arguments on appeal that he was denied his constitutional and statutory rights to an impartial jury and that Hoge should have been stricken for cause.[1]

> When a motion for mistrial is made, based upon an allegedly prejudicial event, the trial court must make an initial factual determination, in the light of all the circumstances of the case, whether the defendant's rights are so "indelibly prejudiced" as to necessitate a new trial. Unless an appellate court can say that determination was wrong as a matter of law, it will not be disturbed on appeal.

Spencer v. Commonwealth, 240 Va. 78, 95, 393 S.E.2d 609, 619, cert. denied, 498 U.S. 908 (1990) (citation omitted). Upon examination of Juror Hoge, the trial court determined that, despite her occupation as a police dispatcher, she was impartial and qualified to serve as a member of the jury. Her explanation for her failure to reveal this information earlier — that she understood the voir dire questions as requesting information about the association of family members with the police — appears

---

[1] The Commonwealth contends that the motion for a mistrial was untimely because the jury list put appellant on notice of Hoge's occupation at the commencement of the trial. The jury list reports Hoge's employment only as "Salem Dispatcher." From viewing the videotape, it appears that appellant's attorney moved for a mistrial when he first learned of Hoge's association with the police. Therefore, we reject the Commonwealth's contention.

reasonable upon review of the questions posed. Furthermore, because appellant did not contend at trial that he would have struck Hoge if he had known of her occupation, he did not demonstrate to the trial court that a mistrial was warranted under the circumstances. Cf. Clozza v. Commonwealth, 228 Va. 124, 135-36, 321 S.E.2d 273, 280 (1984), cert. denied, 469 U.S. 1230 (1985) (no mistrial warranted where juror revealed during the trial that she had a prior association with the police department of another state, was acquainted with a potential witness, and was familiar with the location of a prior crime the defendant had committed). Thus, the trial court did not err in denying appellant's motion for a mistrial.

## V.

Appellant challenges the sufficiency of the evidence that he was the cause of Day's fatal injury. Turner's testimony, however, was direct evidence that only appellant kicked and stomped upon Day. The injuries Day suffered were consistent with him being beaten in such a fashion. Turner stated that after the beating, Day was lifted into the chair, where he remained when the police arrived. Upon finding Day dead, appellant declared that he had not intended to kill him, and wondered what he would do.

Of course, the jury also saw and heard Turner admit that his memory of the day was incomplete and that he had passed out at some point. However, "[t]he weight which should be given to evidence and whether the testimony of a witness is credible are questions which the fact finder must decide." Bridgeman v.

-15-

<u>Commonwealth</u>, 3 Va. App. 523, 528, 351 S.E.2d 598, 601 (1986).

Turner's testimony about appellant's beating of Day was corroborated by the evidence that the apartment was in disarray when the police arrived. Human blood was present on appellant's shoes and the walls and floor of the apartment. Appellant told Stovall he had hit Day with his hands and feet. Finally, appellant admitted to Trout that he had been involved in the beating of Day. Considered as a whole, this was sufficient to establish beyond a reasonable doubt that appellant beat Day and caused his fatal injury.

Appellant contends that Day could have been injured by falling down the stairs outside appellant's apartment. There was no evidence, however, that Day ever did so. "The Commonwealth is only required to exclude hypotheses of innocence that flow from the evidence, and not from the imagination of the accused's counsel." <u>Fordham v. Commonwealth</u>, 13 Va. App. 235, 239, 409 S.E.2d 829, 831 (1991).

The evidence was sufficient to support the jury's verdict of voluntary manslaughter. Accordingly, for the foregoing reasons, we affirm appellant's conviction.

<u>Affirmed</u>.