COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Benton, Coleman,
          Willis, Elder, Bray, Annunziata, Overton, Bumgardner
          and Lemons
Argued at Richmond, Virginia


KIMBERLY P. MARTIN, S/K/A
 KIMBERLY PAIGE MARTIN
                                     MEMORANDUM OPINION[*] BY
v.     Record No. 1556-97-2    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                        JANUARY 12, 1999
COMMONWEALTH OF VIRGINIA


                    UPON A REHEARING EN BANC

        FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
                       Jay T. Swett, Judge

          Lindsay G. Dorrier, Jr., for appellant.

          Robert H. Anderson, III, Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          brief), for appellee.



     Kimberly P. Martin (appellant) was convicted in a jury trial

of grand larceny in violation of Code § 18.2-95 and statutory

burglary in violation of Code § 18.2-91.  On appeal, she

contended that the trial judge erred in refusing to grant her

motion to set aside the jury verdicts.  In an unpublished

opinion, Martin v. Commonwealth, No. 1556-97-2 (Va. Ct. App.

June 9, 1998), a panel of this Court reversed and dismissed the

convictions.  On petition of the Commonwealth, we granted

rehearing en banc to consider whether the evidence was sufficient

to sustain the jury verdicts.  On rehearing en banc, we affirm

---

        [*]Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

appellant's convictions.

Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.  See Juares v. Commonwealth, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997).  So viewed, the evidence established that appellant was employed at Brown's Cleaners until "a couple of months" before the store was burglarized in the early morning hours of January 8, 1996.  One of the co-owners of the store, Harry Brown (Brown), had terminated appellant after learning that she had given false information in an employment statement.  When appellant left her job, her key to the premises was recovered but the combination to the safe was not changed by Brown.  At the time of the burglary, the co-owners of the store, four current employees, and appellant were the only individuals who knew the combination to the safe.

On the night of the burglary, Eddie Mawyer (Mawyer) was plowing snow from the parking lot of the shopping center in which Brown's Cleaners was located.  Between 3:00 a.m. and 4:00 a.m., Mawyer observed a four-wheel drive vehicle enter the parking lot.  He saw two women, one of whom was wearing a Chicago Bulls jacket, get out of the car and walk toward Brown's Cleaners.  After five or ten minutes passed, the women failed to return and Mawyer suspected that "something must be going on."  He approached the side of the dry cleaners, saw that the window had

been broken, and noticed "a shadow of people inside." Earlier that night, the window to the store had been intact.

Mawyer went to a nearby telephone in the parking lot and called the police to report the burglary. As he was giving the license plate number of the vehicle to the police, a woman, whom Mawyer identified as appellant, approached him and began to speak with him.

Officer Michael Deeds (Deeds) was the first officer to arrive at the scene. He noted that the side glass window had been broken. There were also footprints, which appeared to be made from a "lug-soled" or "mountain climbing-type" boot or shoe, that led from the broken glass to the back of the cleaners and then to the back of Kmart, another store located in the shopping center.

Deeds spoke with appellant, who told him that she and her companion, Heather Mortenson, had been walking, sledding, and tubing in the snow. Mortenson was wearing a Chicago Bulls jacket, and appellant was wearing some other sports team jacket. Both women denied entering the cleaners. Deeds then examined the soles of appellant's shoes and noted that appellant and Mortenson were wearing "lug-soled" shoes. Deeds compared appellant's shoes, "as to size," to the footprints in the snow, and they were "very similar." The footprints also appeared to be "the same impression [as] the bottom of [appellant's] tread."

Several other police officers arrived and the two women were

- 4 -

later escorted from the scene. However, twenty or thirty minutes later both appellant and Mortenson were seen walking behind the Kmart store. When the officers asked them why they were in the area again, they replied that "they were just walking again." Both women denied involvement in the burglary and were released within a few minutes.

Officers Stephen Upman and Tom McKeen went to the rear of the Kmart store and saw two sets of footprints leading away from the cleaners along the rear alley. The officers followed these footprints and discovered underneath a pile of snow a pillowcase containing money, money pouches, a money box, a diskette case, and a brick. Officer Upman testified that thirty or forty minutes after the police released appellant and Mortensen, he saw a man, later identified as William Frazier, and a boy walking from behind the Kmart.

The evidence further established that Brown's Cleaners usually closed at 9:00 p.m. on Sundays, but that it may have closed a little earlier on January 7 because of the blizzard. While Brown did not personally close the store and lock the safe on January 7, he testified that the store's money bags were "always" placed in the safe at the end of the day. Brown verified that the money found in the pillowcase behind the Kmart had been taken from his business.

At trial, appellant testified on her own behalf. She confirmed that her companion, Mortenson, was wearing a Chicago

Bulls jacket on January 7 and that the two women were walking through the parking lot to go tubing with some other persons. While she denied her involvement in the burglary, she admitted on cross-examination that she knew the combination to the safe and was aware that at least $150 is left in the safe each night for the morning business.

The jury convicted Martin of grand larceny and statutory burglary. She was sentenced to serve two consecutive twelve-month jail sentences. In an unpublished opinion, a panel of this Court reversed and dismissed the convictions. On petition of the Commonwealth, we granted rehearing en banc to consider whether the evidence was sufficient to sustain the jury verdicts.

## II.

On appeal, "[w]e may not disturb the trial court's judgment unless it is `plainly wrong or without evidence to support it.'" Barlow v. Commonwealth, 26 Va. App. 421, 429, 494 S.E.2d 901, 904 (1998) (citation omitted). In addition, "the inferences to be drawn from proven facts are matters solely for the fact finder's determination." Marshall v. Commonwealth, 26 Va. App. 627, 633, 496 S.E.2d 120, 123 (1998).

In the instant case, the evidence, when viewed in the light most favorable to the Commonwealth, was sufficient to prove appellant's criminal agency in the burglary and grand theft of her former employer. The law is well settled that

"'[c]ircumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" McBride v. Commonwealth, 24 Va. App. 603, 606, 484 S.E.2d 165, 167 (1997) (quoting Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983), cert. denied, 465 U.S. 1109 (1984)). "The fact finder is not required to believe testimony that is inconsistent with the facts, may reject testimony that has been impeached, and may rely solely upon circumstantial evidence to prove an offense, provided the circumstances point unerringly to prove the necessary elements of the offense." Doss v. Commonwealth, 23 Va. App. 679, 685, 479 S.E.2d 92, 95 (1996).

Here, the trier of fact reasonably could have concluded that the two persons who exited the four-wheel drive vehicle, appellant and Mortenson, were the same individuals who went to the dry cleaners, broke its window, and then went inside to steal the money and other items from the safe. Both women were wearing boots that were similar to the two sets of footprints near the scene of the burglary. These footprints led away from the cleaners to the back of the Kmart, where the stolen money was found in a pillowcase underneath a pile of snow.

The evidence established that appellant was aware of the procedures used by the cleaners and knew the combination to the safe. Although appellant denied any involvement in the burglary, the jury was not required to believe her nor give any weight to

her testimony. "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal [her] guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998).

The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that appellant was guilty of both charges. Accordingly, appellant's convictions are affirmed.

Affirmed.

Benton, J., dissenting.

The majority holds that the evidence was sufficient to prove Kimberly P. Martin's guilt beyond a reasonable doubt. I disagree. While we are bound to review the evidence in the light most favorable to the Commonwealth, we must not lose sight of the fact that "whether a criminal conviction is supported by evidence sufficient to prove guilt beyond a reasonable doubt is not a question of fact but one of law." Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598, 601 (1986). We must reverse Martin's convictions if the evidence is insufficient to prove her guilt beyond a reasonable doubt. See In re Winship, 397 U.S. 358, 364 (1970).

The evidence creates only a suspicion that Martin may have committed the burglary and larceny. The principle is well established, however, that "[s]uspicious circumstances '"no matter how grave or strong, are not proof . . . beyond a reasonable doubt . . . ."'" Burchette v. Commonwealth, 15 Va. App. 432, 438-39, 425 S.E.2d 81, 86 (1992) (citations omitted). For this reason, we and the Supreme Court have consistently held that suspicious circumstances or even probability of guilt are insufficient to support a conviction. See Littlejohn v. Commonwealth, 24 Va. App. 401, 414, 482 S.E.2d 853, 859 (1997) (citing Hyde v. Commonwealth, 217 Va. 950, 955, 234 S.E.2d 74, 78 (1977)).

The evidence proved that on the night of this incident, the

- 9 -

driver of a snowplow was clearing the shopping center parking lot following a thirty-inch snowfall. Martin and Mortenson drove onto the parking lot and walked toward the cleaners. A passageway by the side of the cleaners led to the rear of the shopping center and to a hill that sloped down to a residential area. When the two women did not return to their vehicle after ten minutes, the snowplow driver became curious and pushed snow toward the cleaners. Although the snowplow driver saw shadows of people inside the building, he neither saw Martin enter the building nor saw her inside the building. No evidence proved that either Martin or Mortenson went inside the cleaners. When the police questioned Martin, she denied being in the building and told the police that she and Mortenson were there because they had intended to go sledding. At most, the evidence proved that Martin walked toward the building and the passageway.

Proof that Martin had been employed at the cleaners and knew the combination to the safe also raised only a suspicion of guilt. The evidence did not establish that the safe was locked prior to the burglary or that the money taken from the cleaners had been locked in the safe. In fact, during their investigation, the police recovered "a red money box that [the owner kept] on the desk in the office." The evidence further proved that the cleaners unexpectedly closed early the previous day because of the heavy snowfall. Thus, the evidence did not prove that the burglar opened the safe, did not exclude the

possibility that the person who closed the cleaners failed to lock the safe that night, or did not even prove that the burglar took money from a locked safe.

Moreover, the evidence does not exclude the reasonable hypothesis that another person committed the crime. Where a verdict is based on circumstantial evidence, "'all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence.'" Stover v. Commonwealth, 222 Va. 618, 623, 283 S.E.2d 194, 196 (1981) (quoting Inge v. Commonwealth, 217 Va. 360, 366, 228 S.E.2d 563, 567 (1976)). "When, from the circumstantial evidence, 'it is just as likely, if not more likely,' that a 'reasonable hypothesis of innocence' explains the accused's conduct, the evidence cannot be said to rise to the level of proof beyond a reasonable doubt." Littlejohn, 24 Va. App. at 414, 482 S.E.2d at 859 (quoting Haywood v. Commonwealth, 20 Va. App. 562, 567-68, 458 S.E.2d 606, 609 (1995)).

Although the evidence established that Martin's boots were "very similar" to the footprints in the snow near the cleaners, that evidence merely confirms the snowplow driver's testimony that Martin walked toward the building and the passageway. Significantly, no evidence proved that the footprints leading to the cleaners matched the footprints leading away from the cleaners to the money that was hidden behind the Kmart store. The evidence also failed to prove that the footprints in the snow

leading to the place where the stolen property was hidden had any unusual qualities that made it likely that the prints were made by Martin's boots.

In addition, only thirty to forty minutes after Martin and Mortenson were allowed to leave the shopping center, the police officers saw two other individuals ten to twenty feet away from the location of the stolen property. The police did not examine those individuals' shoes or try to match them to the footprints in the snow. While the Commonwealth is not required to exclude the possibility that another person may have committed the crime, see Fordham v. Commonwealth, 13 Va. App. 235, 239, 409 S.E.2d 829, 831 (1991), the Commonwealth is required to exclude hypotheses of innocence that flow from the evidence. See id. See also Cantrell v. Commonwealth, 7 Va. App. 269, 289-90, 373 S.E.2d 328, 338-39 (1988) (stating that the Commonwealth need not "'exclude every possible theory or surmise,'" but it must exclude those hypotheses "'"which flow from the evidence itself."'" (citations omitted)). The existence of these two other individuals near the cleaners and only a few feet away from the stolen property creates a reasonable hypothesis that someone other than Martin committed the burglary.

The evidence, even viewed in the light most favorable to the Commonwealth, creates only a suspicion or probability of guilt. "A conviction based upon a mere suspicion or probability of guilt, however strong, cannot stand." Bridgeman, 3 Va. App. at

- 12 -

528, 351 S.E.2d at 601-02.  Thus, I would reverse Martin's convictions and dismiss the indictments.