UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Judges AtLee, Malveaux and Senior Judge Annunziata
Argued at Fredericksburg, Virginia


MIGUEL ANGEL SALMERON

MEMORANDUM OPINION* BY
v.        Record No. 0475-16-4          JUDGE MARY BENNETT MALVEAUX
                                        AUGUST 22, 2017
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
John M. Tran, Judge

Kathryn C. Donoghue, Senior Assistant Public Defender, for
appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Miguel Salmeron ("appellant") was convicted of abduction with the intent to defile, in

violation of Code § 18.2-48, and two counts of aggravated sexual battery, in violation of Code

§ 18.2-67.3.  On appeal, he contends that the trial court erred in sustaining the Commonwealth's

objections to appellant's questions as leading.  Appellant further argues that the court erred in

finding sufficient evidence to convict, as the victim's testimony was inherently incredible.  For the

following reasons, we affirm the judgment of the trial court.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

### The Offense

In 2013, D.R., a twelve-year-old girl, lived in an apartment building with her family. Appellant and his family lived upstairs in the same building. The families' children often played together, and the adults were good friends.

Appellant would occasionally drive D.R. and his daughter, E.S., to school. During one of these trips just before the summer of 2013, appellant touched D.R.'s thigh while she was sitting in the front seat. D.R. felt uncomfortable and did not ride to school with appellant after this incident.

During the summer of 2013, D.R. tutored E.S. at appellant's apartment. During one of these sessions, E.S. told D.R. that she forgot her notebook in her bedroom, which she shared with her parents. When D.R. went to retrieve the notebook, she saw appellant on the bed. As D.R. grabbed the book, appellant seized her by the shoulders and pushed her into the bathroom connected to the bedroom. Appellant closed the bathroom door and took off D.R.'s clothes. D.R. was "screaming and crying" at this time. Appellant touched D.R.'s chest with his hands. He also touched the area surrounding D.R.'s vagina with both his hand and his unclothed penis.[1] Once appellant stopped touching D.R., he told her to "keep quiet and not tell anyone."

After the incident, D.R. dressed in the bathroom and went back to her apartment with her little sister, C.R., who had been on appellant's balcony with E.S. D.R. did not tell her parents about the incident because she was afraid appellant would "do something" to her family.

The two families interacted normally after the incident, and D.R. continued to tutor E.S., at both her apartment and appellant's apartment. D.R.'s mother did not observe her behaving

---

[1] D.R. identified these areas at trial by circling the chest area and the genital area, which she labeled "girl area," on a diagram provided by the Commonwealth. She also labeled appellant's genitalia as "boy parts."

any differently while the two families were together, but she did notice that D.R. would always go into her bedroom when appellant was around. D.R. did not go to appellant's apartment alone after the incident.

On August 7, 2014, D.R. told her mother about the sexual assault. After D.R. told her what had happened, her mother informed appellant's wife, Marta Villatoro, who immediately came downstairs to their apartment. D.R. told her what had occurred. Villatoro called her husband and told her what D.R. had reported.

That same day, appellant was working at Loudoun Quarries, but left unexpectedly and without notice that afternoon. He never returned to his job. Appellant contacted his employer a few days later, told him that he "had a bad problem," and asked about getting his paychecks to his family. He also asked if he could have his job back in the future. Appellant called his employer additional times to check on getting his pay and other benefits, including 401(k) funds, to his family. A check from appellant's 401(k) plan was eventually sent to him in North Carolina.

On October 8, 2014, appellant was arrested in North Carolina. Appellant told law enforcement that he was "Jose Dominguez," and he possessed a North Carolina identification card in that name.

Appellant was indicted for abduction with the intent to defile, in violation of Code § 18.2-48, three counts of aggravated sexual battery, in violation of Code § 18.2-67.3, and animate object sexual penetration in violation of Code § 18.2-67.2. On May 22, 2015, one count of aggravated sexual battery was severed from the charges. On June 15, 2015, appellant was tried before a jury on the remaining four indictments.

<u>The Trial</u>

The first witness for the Commonwealth was D.R., who was fourteen at the time of trial. During cross-examination, appellant's counsel questioned D.R. about prior inconsistent statements she had made during the investigation and in prior hearings.

Appellant's counsel challenged inconsistencies in D.R.'s account of the specific nature of the sexual contact that occurred during the assault. Although D.R. testified on cross-examination that appellant had put his finger in her vagina, appellant's counsel reminded her that on direct examination she said no such penetration occurred. Similarly, counsel reminded her that while she testified on direct examination that appellant never touched her "girl part," she said at the preliminary hearing that he had touched his "private part" to hers. D.R. clarified that she had meant appellant had touched her vagina with his penis by "touch[ing] around it," but that he did not "put it in." She testified on re-direct that it was hard to remember all the details of the incident, which happened two years earlier. When questioned further about inconsistent statements she made regarding any digital penetration, she replied, "I'm up here and I'm under a lot of pressure and you're making me feel worse."

Appellant's counsel also highlighted inconsistencies in D.R.'s memory about the circumstances surrounding the assault. Whereas D.R. had testified at the preliminary hearing that when she left the bedroom C.R. was watching television and E.S. was practicing reading, she testified at trial that they were both on the balcony. She testified on cross-examination that she left the notebook in the bedroom after previously testifying that she had thrown it. She testified at trial that appellant was fully clothed when she first saw him in the bedroom after saying at the preliminary hearing that he was not wearing a shirt. And after testifying at the preliminary hearing that it had taken appellant twenty-five minutes to remove her shirt and fifteen minutes to remove her pants, D.R. testified at trial that she could not remember how long

she was in the bathroom with appellant. D.R. explained that she did not remember many of these details because the attack had occurred "a while back" and she was "more focused on getting out" of the bathroom at the time. She testified that she did not have a good memory for certain details, such as what appellant was wearing during the assault. She also said that counsel for appellant was "confusing" her.

E.S. testified on her father's behalf. She testified that there was not a time in which she was alone in her apartment with just appellant, D.R., and C.R. E.S. stated that if she was in the living room, she could hear people both in the bedroom and its connected bathroom. She testified that when she and a friend were studying at her apartment, they would have been in the living room. E.S. stated that at no time during the summer of 2013 did anything unusual happen in her apartment.

During E.S.'s testimony, the Commonwealth's attorney objected to many questions asked by appellant's counsel as leading. The trial court sustained some of these objections. After the court sustained one such objection towards the end of E.S.'s direct testimony, appellant's counsel asked the court for permission to approach the bench, and the court denied this request.

Appellant testified and denied touching D.R. inappropriately. He said that he left the area after his wife told him about the allegations because "justice was not going to be done" and that he was waiting in North Carolina to receive money from his employer in order to pay for an attorney. Appellant stated that he found the "Jose Dominguez" ID on a couch outside and that he did not know why he told the police that the name on the ID was his real identity.

Appellant renewed a previously stated motion to strike based upon the inconsistencies in D.R.'s testimony. The court denied the motions to strike the aggravated sexual battery and abduction charges, and took the motion to strike the animate object sexual penetration charge under advisement. The jury, during deliberation, sent a question to the court concerning the

animate object sexual penetration charge, and at that time the court stated that it would be unnecessary to answer the question because it was striking that particular charge. The jury found appellant guilty of both counts of aggravated sexual battery and of abduction with the intent to defile.

Appellant filed a motion to set aside the jury verdict. The court denied the motion. Appellant appealed his convictions to this Court.[2]

## II. ANALYSIS

### A. Leading Questions

On appeal, appellant first argues that the trial court erred in sustaining the Commonwealth's objections to leading during the testimony of E.S., as the questions were not leading and the refusal to admit this testimony was prejudicial. The Commonwealth, in response, contends that this assignment of error has been waived pursuant to Rule 5A:18.

Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Under Rule 5A:18, the "same argument must have been raised, with specificity, at trial before it can be considered on appeal." Correll v. Commonwealth, 42 Va. App. 311, 324, 591 S.E.2d 712, 719 (2004), aff'd on other grounds, 269 Va. 3, 607 S.E.2d 119 (2005). "Making one specific argument on an issue does not preserve a separate legal point on the same issue for review." Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (*en banc*), aff'd

---

[2] In separate proceedings after this trial, appellant entered Alford guilty pleas to two additional counts of aggravated sexual battery. While appellant's notice of appeal references the case numbers for all of his convictions, including the additional counts of aggravated sexual battery, the assignments of error in his amended petition for appeal relate only to the jury trial and reference only those charges on which he was actually tried. The two additional convictions are therefore not at issue in this appeal.

by unpub'd order, No. 040019 (Va. Oct. 15, 2004). The purpose of Rule 5A:18 is to provide the trial court with adequate notice of the objection, "so that the trial court has 'an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals.'" Brown v. Commonwealth, 279 Va. 210, 217, 688 S.E.2d 185, 189 (2010) (quoting West v. Commonwealth, 43 Va. App. 327, 337, 597 S.E.2d 274, 278 (2004)).

The trial court sustained several objections made by the Commonwealth during counsel for appellant's direct examination of E.S., on the ground that the questions were leading in nature. Aside from asking for permission to approach the bench, after each sustained objection counsel for appellant rephrased or moved on to the next question without further comment. During a break in the next witness' testimony, however, appellant's counsel told the court that his co-counsel had "tried to elicit some testimony and ask [E.S.] some questions. The [c]ourt ruled it was leading and didn't allow her to get into it." Appellant did not provide any further explanation for why he wanted to make a proffer of E.S.'s testimony. The trial court allowed counsel to proffer to what E.S. would have testified. After appellant's proffer, the trial court noted that it would "have sustained that in any event," to which appellant's counsel responded, "[t]hat's why I wanted to approach the bench to ask . . . if we could question her in a leading manner, Your Honor, and we weren't able to." After some discussion, the court told counsel that "a leading question is still a leading question. And she actually didn't seem to need any help." Counsel for appellant replied, "I think with a little bit of leeway, we could have –," to which the court replied, "No. I think with a little bit of leeway you would have gotten her to say yes or no to your questions, which is not how I like to direct."

Here, the record clearly reflects that appellant did not argue to the trial court that his questions to E.S. were non-leading in nature. At no point did counsel for appellant challenge the court's characterization of the questions as leading. In fact, counsel for appellant specifically

stated that his request was to ask questions of E.S. in a leading manner. While appellant's

proffer did alert the trial court to possible error, at no point did appellant's counsel inform the

court of the specific error he now alleges on appeal. Thus, appellant has waived this assignment

of error under Rule 5A:18.[3]

### B. Inherently Incredible Testimony

Appellant further contends that the trial court erred in finding sufficient evidence to

convict him, as the complaining witness was inherently incredible.

On appeal, when considering a challenge to the sufficiency of the evidence, "we

'presume the judgment of the trial court to be correct' and reverse only if the trial court's

decision is 'plainly wrong or without evidence to support it.'" Kelly v. Commonwealth, 41

Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Davis v. Commonwealth, 39

Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002)). Stated otherwise, a reviewing court does not

"ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable

doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979). Rather, "the relevant question is

whether . . . *any* rational trier of fact could have found the essential elements of the crime beyond

a reasonable doubt." Id. at 319. "This familiar standard gives full play to the responsibility of

the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw

reasonable inferences from basic facts to ultimate facts." Id.

> Our oft-repeated statement regarding appellate review of
> witness testimony is, "the trier of fact is the sole judge of the
> credibility of the witnesses, unless, as a matter of law, the
> testimony is inherently incredible." Walker v. Commonwealth,
> 258 Va. 54, 70-71, 515 S.E.2d 565, 575 (1999), cert. denied, 528
> U.S. 1125, 145 L. Ed. 2d 829, 120 S. Ct. 955 (2000) (citations
> omitted). To be "incredible," testimony "must be either so
> manifestly false that reasonable men ought not to believe it, or it
> must be shown to be false by objects or things as to the existence

---

[3] We note that appellant has not asked this Court to consider this assignment of error
under the "ends of justice" exception to Rule 5A:18, and we decline to do so *sua sponte*.

and meaning of which reasonable men should not differ."
Cardwell v. Commonwealth, 209 Va. 412, 414, 164 S.E.2d 699,
701 (1968) (quoting Burke v. Scott, 192 Va. 16, 23, 63 S.E.2d 740,
744 (1951)).

Juniper v. Commonwealth, 271 Va. 362, 415, 626 S.E.2d 383, 417 (2006). Thus, the conclusions of the fact finder on issues of witness credibility "may only be disturbed on appeal if this Court finds that [the witness'] . . . testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" Robertson v. Commonwealth, 12 Va. App. 854, 858, 406 S.E.2d 417, 419 (1991) (quoting Fisher v. Commonwealth, 228 Va. 296, 299-300, 321 S.E.2d 202, 204 (1984)).

"Prior inconsistent testimony is a factor in determining the credibility of a witness, but it does not automatically render the witness' testimony incredible." Fordham v. Commonwealth, 13 Va. App. 235, 240, 409 S.E.2d 829, 832 (1991). "Potential inconsistencies in testimony are resolved by the fact finder," not the appellate court. Towler v. Commonwealth, 59 Va. App. 284, 292, 718 S.E.2d 463, 467 (2011). "[T]here can be no relief" in this Court if a witness testifies to facts "which, if true, are sufficient to maintain the[] verdict, . . . [i]f the trier of the facts . . . base[d] the verdict upon that testimony," even if that "witness' credit [was] impeached by contradictory statements." Smith v. Commonwealth, 56 Va. App. 711, 718-19, 697 S.E.2d 14, 17 (2010) (quoting Swanson v. Commonwealth, 8 Va. App. 376, 379, 382 S.E.2d 258, 259 (1989)). In assessing witness credibility, the fact finder may accept the parts of a witness' testimony it finds believable and reject other parts as implausible. See Pugliese v. Commonwealth, 16 Va. App. 82, 92, 428 S.E.2d 16, 24 (1993).

Appellant argues on appeal that because D.R.'s testimony was replete with inconsistencies and contradictions, her uncorroborated testimony was inherently incredible. This contention is without merit.

Contrary to appellant's suggestion, D.R.'s testimony was not inherently incredible or so contrary to human experience as to render it unworthy of belief. Appellant notes that D.R. testified inconsistently in several instances: (1) that appellant put his fingers in her "girl area"; (2) whether appellant touched her private part with his private part; (3) whether C.R. and E.S. were in the apartment during and immediately after the incident; (4) what D.R. did with E.S.'s notebook; (5) what D.R. told C.R. after leaving appellant's apartment; and (6) whether appellant was wearing shorts and whether he had a shirt on during the assault. While D.R. did testify inconsistently in these instances, for the following reasons, these discrepancies did not render her testimony inherently incredible.

Appellant contends that the most concerning inconsistency was D.R.'s contradictory position during direct and cross-examination regarding whether appellant penetrated her vagina with his fingers. At trial, D.R. initially testified that appellant's fingers did not penetrate her vagina, but testified during cross-examination that her vagina had been penetrated. She said she was not lying but did not recall that detail well. She indicated she felt pressure testifying. D.R. was twelve years old when the abuse occurred, and a jury reasonably could believe that someone of her age and life experience would not comprehend the significance of whether appellant's finger merely touched her private part or penetrated her vagina.[4]

Additionally, D.R.'s inconsistent testimony regarding whether appellant touched his naked penis to her thigh or her vagina does not render her testimony incredible. At trial, D.R. testified that appellant's penis touched her thigh, but she later said he touched his penis around, meaning on top of, her private part, but he did not put it inside. On re-direct examination, D.R. explicitly said appellant put his penis on top of her private part and that she recalled that fact

---

[4] The court in fact struck the object sexual penetration charge, but noted that that action was not a comment on D.R.'s credibility.

clearly. As with the prior discrepancy, the significance of the precise location of the touching was not something a young girl would necessarily comprehend.

The other inconsistencies in D.R.'s testimony—what D.R. told her younger sister upon leaving appellant's apartment, what she did with E.S.'s notebook, whether appellant removed his pants or only removed his penis from his pants, and where the other children were located in the apartment during the incident—all concern minor details surrounding the incident. These discrepancies can be explained by the length of time between the offense and trial, as the trial occurred two years after the abuse.

Appellant also alleges that D.R.'s testimony concerning the duration of the incident was incredible, as she testified that it took twenty-five minutes for appellant to remove her shirt, and another fifteen minutes for him to remove her pants. He also contends that it was incredible that E.S. and C.R. saw and heard nothing during the assault. However, D.R. specifically testified that she was not focused on time during the incident. She also testified at trial that her sister and E.S. were on the apartment's balcony, a plausible explanation for why they did not hear the assault.

Throughout her testimony, D.R. was unwavering in her statements that appellant pushed her into the bathroom, touched her chest and vagina with his hand, and warned her not to tell anyone what had happened. She testified twice that appellant's penis touched her private part. Based on the record, a reasonable fact finder with all of the evidence before it could determine that the inconsistencies in D.R.'s various statements arose from her youth, the length of time between the offense and trial, the traumatic nature of the assault, and the fact that the assailant was a close family friend. See Corvin v. Commonwealth, 13 Va. App. 296, 299, 411 S.E.2d 235, 237 (1991) (recognizing that a "victim's youth, fright and embarrassment [may] provide[] the jury with an acceptable explanation" for a victim's otherwise inexplicable statements or actions). Additionally, although D.R. waited a year to report the abuse, this fact alone does not make her

testimony inherently incredible. See Juniper, 271 Va. at 415, 626 S.E.2d at 417 ("The mere fact that a witness may have delayed in reporting knowledge of a case or given inconsistent statements during the investigation of a crime does not necessarily render the testimony unworthy of belief."). Here, appellant warned D.R. not to tell anyone about what happened, and she did not report the incident because she was afraid appellant would "do something" to her family.

In addition to D.R.'s testimony, the jury also could have considered appellant's admission that he left Virginia when told by his wife of D.R.'s allegations as probative evidence of his guilt. See Ricks v. Commonwealth, 39 Va. App. 330, 335, 573 S.E.2d 266, 268 (2002) (noting that "any flight at a time when it may be to avoid arrest, prosecution, or confinement tends to show a consciousness of guilt" (quoting Langhorne v. Commonwealth, 13 Va. App. 97, 103, 409 S.E.2d 476, 480 (1991))). Appellant's failure to inform law enforcement of his real identity and his possession of a false identification card were also relevant to prove consciousness of guilt.

In this case, D.R.'s testimony, while somewhat contradictory, was not inherently incredible. The jury, sitting as trier of fact, was able to resolve the inconsistencies in her testimony, and its acceptance of that testimony was not plainly wrong. The jury reasonably weighed the totality of the evidence in the case, rejected appellant's claim of innocence, and concluded that appellant was guilty of the charged offenses beyond a reasonable doubt. Based upon the record, we cannot say that the judgment was plainly wrong or without evidence to support it.

## III. CONCLUSION

We find that appellant has waived his first assignment of error under Rule 5A:18. We further hold that the evidence was sufficient to sustain appellant's convictions. Consequently, we affirm the judgement of the trial court.

<u>Affirmed.</u>