# Richmond

ALPHEUS E. AVENT v. COMMONWEALTH OF VIRGINIA.

December 6, 1968.

Record No. 6792.

Present, Eggleston, C.J., Buchanan, I'Anson, Carrico, Gordon and Harrison, JJ.

*David C. Dorset; Lawrence D. Wilder,* for plaintiff in error.

*Anthony F. Troy, Special Counsel (Robert Y. Button, Attorney General; Robert D. McIlwaine, III, First Assistant Attorney General,* on brief), for defendant in error.

HARRISON, J., delivered the opinion of the court.

Alpheus E. Avent was indicted for statutory burglary. He waived a jury, was tried by the court, found guilty and was sentenced to con-

finement in the penitentiary for a term of 5 years. From this judgment he was granted a writ of error, and we have before us his contentions that the evidence was not sufficient to sustain the conviction, and that a witness for the Commonwealth who testified as an expert in fingerprinting was not qualified.

On October 4, 1966, the storehouse of the Friedman-Marks Clothing Company, Incorporated, at 1400 West Marshall Street, Richmond, Virginia, was broken into, ransacked, and clothing, valued at between $1500 and $1800 wholesale, was stolen. An inventory disclosed the missing clothing to be 56 coats and 120 pairs of pants. Each item stolen had a cut number, a bundle number and a customer identification number.

It was determined that entry into the building was gained by breaking a window on McKinney Street. Testimony revealed that the bottom casement of this window is approximately 7 feet from the ground or street level. Glass from the window and a rock were found on the inside of the building lying on steps, located directly under the window, which lead to the basement. A report was made to the Richmond Bureau of Police, and the investigation was conducted by Officer Robert D. Hobson. This officer testified that he dusted the broken glass and obtained a series of latent fingerprints.

Richmond Police Officer Donald C. Rigney testified that he made the original comparison of the prints taken from the window glass with known prints of defendant, and found on the glass a fingerprint of Avent.

Officer Hobson also testified that he later compared the latent print found on the window glass with the known print of defendant that was on file and that they were identical.

Stuart B. Childress, of the personnel and purchasing department of Friedman-Marks, testified as to the missing clothing, the manner in which entry was gained into the building, and the location of the window with reference to the street level. He stated that he did not know defendant Avent; that defendant to his knowledge, extending over 32 years, had never worked for Friedman-Marks, and would have no business being on the premises there.

The record shows that one Herbert Leon Pryor had also been tried and convicted of breaking into Friedman-Marks on October 4, 1966. He was called as a witness by the Commonwealth but refused to testify.

No evidence was introduced on behalf of defendant, and he did not testify.

■ Defendant says the trial court erred in ruling that Officer Rigney was qualified as an expert witness. This officer had been a member of the Richmond Police Department for 7 years and had been with the identification section since September, 1965. His apprenticeship was served within the department, and he was trained under Officer Hobson and five other officers named in the testimony. Rigney was examined in detail as to his qualifications, the number of times he had testified as an expert and the manner in which fingerprints are compared and identified.

The trial court concluded, correctly we hold, that Officer Rigney and Officer Hobson were qualified as experts and permitted them to testify. In *Swersky v. Higgins*, 194 Va. 983, 985, 76 S. E. 2d 200, 202 (1953), we held:

> "A trial court will not be reversed for allowing a witness to testify as an expert unless it appears clearly that he was not qualified in the field in which he gives evidence, as the question of his qualification is largely in the discretion of the trial court. [Citing cases.]" See also *Jordan v. Commonwealth*, 207 Va. 591, 598, 151 S. E. 2d 390, 395 (1966); *Ames & Webb, Inc. v. Commercial Laundry*, 204 Va. 616, 621, 133 S. E. 2d 547, 550 (1963); 7 Mich. Jur., Evidence, § 167, p. 532; 31 Am. Jur. 2d, Expert and Opinion Evidence, § 31, p. 530.

■ The evidence here on which the Commonwealth sought a conviction is admittedly circumstantial. As to the sufficiency of such evidence to warrant a conviction, we held in *Wright v. Commonwealth*, 196 Va. 132, 137, 82 S. E. 2d 603, 606 (1954) that:

> "It is a well settled general rule that whatever may be established by direct evidence in a criminal case may also be established by circumstantial evidence. While such evidence should be received with caution, it is legal and competent and entitled to the same weight as direct testimony if it is of such convincing character as to exclude every reasonable hypothesis other than that the accused is guilty. [Citing cases.]"

This brings us to the crux of the instant case. Does the Commonwealth's evidence, tested by rules that are well established, supply an adequate basis for the judgment of the court finding defendant guilty of statutory burglary? Defendant contends that it does not,

for he says the only evidence of his guilt is the one fingerprint on the piece of broken glass found on the steps below a window at Friedman-Marks. He points to the fact that there were other fingerprints on the piece of glass which were not identified or explained, and that the evidence does not show whether the identified fingerprint of defendant was on the inside or outside of the glass. While this can be argued, the mere presence of the fingerprints of other persons on the glass would not have exonerated defendant or explained the presence of his fingerprint thereon.

Defendant complains because no effort was made to compare or identify the entire series of latent prints that were found on the broken glass. The explanation of the experts is that this was unnecessary, for once a positive identification is made of the print of one finger, such is regarded as so conclusive that further comparisons of the prints of other fingers are not indicated.

We must review the evidence in this case not with respect to what action we might have taken, but as to whether the evidence justified the trial judge, as a trier of the facts, in finding defendant guilty. It is our duty to regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom. When such evidence leads to the conclusion of guilt beyond a reasonable doubt, and excludes every reasonable hypothesis of innocence, it is sufficient to support a finding of guilty. This court will affirm the judgment of the trial court unless "it appears from the evidence that such judgment is plainly wrong or without evidence to support it." Code § 8-491.

The trial court had the responsibility of weighing the evidence and from such facts as it might find, to draw appropriate inferences respecting the guilt of defendant. The evidence conclusively established that the storehouse of Friedman-Marks was burglarized and a large quantity of valuable clothing removed therefrom on October 4, 1966. The trial court could have concluded that incident to gaining entry into the building, the pane of a window was broken; that the outside casement of this window was some 7 feet from the ground level, and of such height as would not normally be accessible to the general public or to the defendant; and that defendant was not, and had never been an employee of Friedman-Marks, and would have no reason to have had any contact with, or access to, the window, or to have placed his fingerprints thereon casually or in normal course.

The fingerprint of defendant on the broken window glass was

identical with his known fingerprint. The trial court could have found that defendant had been at the window of the storehouse, and that his fingerprint was impressed on the pane of glass broken from the window where entry to the building was gained.

The print was properly admissible in evidence, and its weight was a matter for the trier of facts. Avent did not testify, and there was no suggestion from any source that he on any account could have had ready or legitimate access to the window and the pane therefrom upon which his fingerprint was found.

In *Stevenson* v. *United States*, 380 F. 2d 590, 592 (D. C. Cir. 1967), *cert. denied*, 389 U. S. 962 (1967), evidence, including defendant's known fingerprints that matched prints removed from objects in a home where a robbery took place, and to which defendant had no legitimate access, was held sufficient to support a conviction for housebreaking and robbery. The court said: "Fingerprint identification has long been recognized by the courts as entirely appropriate. The accuracy of fingerprint identification is a matter of common knowledge and no case has been cited, and we have found none, where identification so established has been rejected."

In *Parker* v. *Rex* (1912) 3 B. R. C. 68, the High Court of Australia held:

"We are asked to allow the point to be argued whether, when evidence of finger prints is the only evidence of identity, it is sufficient to support a conviction. Leave is asked in the hope that the rule may be laid down that it is not. Signatures have been accepted as evidence of identity as long as they have been used. The fact of the individuality of the corrugations of the skin on the fingers of the human hand is now so generally recognized . . . [that] a fingerprint is . . . in reality an unforgeable signature."

In *United States* v. *Kelly*, 55 F. 2d 67, 69, 83 A. L. R. 122, 124, 125 (2 Cir. 1932), the court said:

"Finger printing seems to be no more than an extension of methods of identification long used in dealing with persons under arrest for real or supposed violations of the criminal laws. It is known to be a very certain means devised by modern science to reach the desired end, and has become especially important in a time when increased population and vast aggregations of people

in urban centers have rendered the notoriety of the individual in the community no longer a ready means of identification." See also *McLain* v. *State*, 198 Miss. 831, 24 So. 2d 15 (1945); *Moon* v. *State*, 22 Ariz. 418, 198 P. 288 (1921); *Anthony* v. *State*, 85 Ga. App. 119, 68 S. E. 2d 150 (1951).

In *Lawless* v. *State*, 3 Md. App. 652, 241 A. 2d 155 (1968), the evidence consisted of defendant's fingerprints impressed upon a pane of glass that was broken from a door where entry was gained. The court held that such tended to show that the defendant was at the scene of the crime, and that he was there unlawfully, and was sufficient to sustain his conviction for grand larceny. In a well considered opinion reviewing numerous cases, the court said:

"The jury could find that the appellant had been at the basement door of the dwelling at some time from the evidence that his fingerprint was impressed on the pane of glass broken from the door where entry was gained. The print was properly admissible in evidence and its weight was a matter for the trier of facts. See *Breeding* v. *State*, 220 Md. 193, 199, 151 A. 2d 743; *Debinski* v. *State*, 194 Md. 355, 359, 71 A. 2d 460. However, the evidence must also be sufficient to show or to support a rational inference that the appellant was the criminal agent, for '[i]t is generally recognized that finger print evidence must be coupled with evidence of other circumstances tending to reasonably exclude the hypothesis that the print was impressed at a time other than that of the crime'. *McNeil* v. *State*, 227 Md. 298, 300, 176 A. 2d 338, 339.

\* \* \*

"From the cases considered, we think it clear that the 'finger print evidence found at the scene of the crime' as stated in the rule enunciated in *McNeil* v. *State, supra,* refers only to that evidence which proved that the print was that of the accused. Thus the 'circumstances tending to reasonably exclude the hypothesis that the print was impressed at a time other than that of the crime' need not be circumstances completely independent of the fingerprint, and may properly include circumstances such as the location of the print, the character of the place or premises where it was found and the accessibility of the general public to the object on which the print was impressed. A latent fingerprint found at the scene of the crime, shown to be that of an accused, tends to

show that he was at the scene of the crime. The attendant circumstances with respect to the print may show that he was at the scene of the crime at the time it was committed. If they do so show, it is a rational inference, consistent with the rule of law both as to fingerprints and circumstantial evidence, that the accused was the criminal agent. While a defendant does not have the obligation to testify himself or to offer testimony to explain the presence of his prints, a court cannot supply evidence that is lacking. *United States* v. *Hayes*, 385 F. 2d 375 (4th cir. 1967). We also feel that the rule in *McNeil* does not compel the State to negative every conceivable possibility that an accused, shown to be at the scene of a crime by his fingerprint, was present other than at the time of the commission of the crime. The fingerprint evidence, as we construe it, need be coupled only 'with evidence of other circumstances *tending* to *reasonably* exclude the hypothesis that the print was impressed at a time other than that of the crime' (emphasis added). The rule does not require under all circumstances in every case that the State affirmatively and conclusively prove that the accused could *not* have been there other than a time when the crime was committed. Thus, in view of the other circumstances, it may not be necessary for the State to produce evidence by *each* person who may have authority or apparent ability to admit an accused to the premises lawfully, that he did not authorize that person to enter the premises." 3 Md. App. 652 at 656, 658, 659, 241 A. 2d 155 at 158, 159, 160.

See also 29 Am. Jur. 2d, Evidence, § 375, p. 425; 30 Am. Jur. 2d, Evidence, § 1144, p. 320.

In the instant case the *corpus delicti* of the burglary was proved. The question is whether the evidence is sufficient to show that defendant was one of the criminal agents. By the mode of entry, the location of the window, and the positive identification of the print on the broken pane, it was a rational inference that defendant was there unlawfully, and there was no evidence to the contrary. Defendant was not an employee of Friedman-Marks and had no business in or around the premises. The height of the window shows it was not designed to attract a view of the inside by the general public or by people passing along the street. It could be reached and touched only by conscious and deliberate effort. Admittedly, from the evidence it would have been *possible* for defendant to have reached the window and impressed his fingerprints thereon at a time other than

when the building was burglarized. However, and as was said in *Lawless, supra*, we do not construe the law as requiring that the Commonwealth affirmatively and conclusively negate every possibility that defendant, who was shown to have been at the scene of the crime by his fingerprint, was present other than at the time of the commission of the crime. The trial court concluded that the fingerprint evidence was sufficient to convict when coupled with evidence of other circumstances which tended to reasonably exclude the hypothesis that the print was impressed at a time other than that of the crime. It found that defendant entered the premises at the time charged and stole the goods. We are unable to say that there is no legally sufficient evidence, or inference drawable therefrom, from which the trial court could find defendant guilty beyond a reasonable doubt, and accordingly the judgment of conviction is

*Affirmed.*