COURT OF APPEALS OF VIRGINIA


Present:   Judges Kelsey, Petty and Senior Judge Willis
Argued at Chesapeake, Virginia


TYWONE LOVELL WILKINS

MEMORANDUM OPINION[*] BY
v.        Record No. 1297-07-1                     JUDGE WILLIAM G. PETTY
OCTOBER 28, 2008
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF SOUTHAMPTON COUNTY
Richard D. Taylor, Jr., Judge Designate

Paul Fritzinger, Deputy Public Defender (Office of the Public
Defender, on brief), for appellant.

Craig W. Stallard, Assistant Attorney General (Robert F. McDonnell,
Attorney General, on brief), for appellee.


Following a bench trial, Tywone L. Wilkins was convicted of four counts of statutory

burglary and four counts of grand larceny in violation of Code §§ 18.2-91 and 18.2-95. Wilkins

argues on appeal that the evidence was insufficient to prove all eight counts beyond a reasonable

doubt. For the following reasons, we disagree and affirm.

I. BACKGROUND

"On appeal of a conviction, 'the evidence and all reasonable inferences flowing

therefrom must be viewed in the light most favorable to [the Commonwealth,] the prevailing

party in the trial court.'" Payne v. Commonwealth, 52 Va. App. 120, 123, 661 S.E.2d 513, 514

(2008) (quoting Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003)).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On January 19, 2006, the homes of the Simmonses, the O'Bryants, the Nixons, and the Bryants, all located within twenty miles of one another in rural Southampton County, were broken into and burglarized.

When Mrs. Simmons left for work that morning all of the doors to her house were closed, but the side door was unlocked. She left her house around 8:00 a.m. and returned around 5:15 p.m. When she returned home that evening, she found that the master bedroom of her house had been completely ransacked. Upon further inspection, Mrs. Simmons found that she was missing jewelry and a video camera.

Mr. and Mrs. Bryant also left for work that morning and locked their doors behind them. When they returned home that evening, they found the front door kicked in and the master bedroom ransacked. A .38 caliber handgun and holster, jewelry, and a digital camera were missing.

Mr. O'Bryant lived on the same road as, and approximately two miles away from, the Simmonses. When he left for work that morning, his doors were closed and locked – when he returned from work that afternoon, his back door was "flopping open." O'Bryant entered his home through the front door and noticed that his master bedroom had been ransacked. He noted that his laptop, a coin collection, a large amount of change, jewelry, and an XBOX[1] and all of its games were missing. The lock on O'Bryant's safe was "busted," and all of the contents were missing. He stated that inside the safe, he stored gift cards as well as F&M, BB&T, and BSV banking envelopes all containing significant amounts of cash for different purposes.

Finally, Mr. Nixon testified that when he left that morning, all of the doors to his home were locked. When he returned home later that evening, he found that his front door had been kicked in. Nixon described the inside of his home as "total disarray. Everything was scattered,

---

[1] An XBOX is a video game console.

kicked, knocked over, turned over. Just everything had been rummaged through." Nixon noticed that he was missing a Playstation,[2] an XBOX, a number of games, gift cards, and camera equipment. Outside of Nixon's home, Detective Jimmy Ricks of the Southampton Sheriff's Department discovered a sock containing bank envelopes from F&M Bank, BSV Bank, BB&T Bank, and an empty Lowe's gift card wrapper.

Wilkins became a suspect in all four burglaries after a forensic scientist identified his fingerprints on four out of seven banking envelopes found outside the Nixons' house. After locating Wilkins, Detective Ricks spoke with him and obtained a written statement regarding his involvement in these crimes. Wilkins admitted to being present at two homes while the burglaries were taking place. When asked to "tell me the steps you went on the day the houses were broken into," Wilkins described being with several other people as they broke into the homes. Wilkins admitted to being in one house and getting "$32 from a bank envelope under the seat that I stole." He also described a gun and a holster that had been taken from another house, but he never admitted to entering that house.

Lieutenant James Modlin and Detective Ricks then drove Wilkins to the four houses that were burglarized on January 19. Wilkins admitted to entering the Simmonses' house and indicated that the Bryants' house "looked familiar, but he was not sure." He denied going to the O'Bryant or Nixon homes.

Wilkins was tried for all four burglaries and the accompanying larceny charges in one bench trial.[3] The trial court found that "the overwhelming inferences or inference that can be

---

[2] A Playstation is a video game console.

[3] Joinder of offenses is permitted by Rules 3A:10(c) and 3A:6(b) if (1) "justice does not require separate trials" and (2) "if the offenses are based on the same act or transaction or on two or more acts or transactions that are connected or constitute parts of a common scheme or plan." Wilkins did not challenge the joinder of the offenses at trial or on appeal nor does he argue that the four burglaries were not part of a common scheme or plan; therefore, the trial court was

drawn from both the circumstantial evidence in this case and in the direct evidence in this case is that Mr. Wilkins is guilty as to each count . . . ." It is from this judgment that Wilkins appeals.

## II. ANALYSIS

When considering the sufficiency of the evidence presented below, we "'presume the judgment of the trial court to be correct'" and reverse only if the trial court's decision is "'plainly wrong or without evidence to support it.'" Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002)); see Code § 8.01-680. We do not "substitute our judgment for that of the trier of fact." Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002). "'Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Kelly, 41 Va. App. at 257, 584 S.E.2d at 447 (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). This principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." Wright v. Commonwealth, 196 Va. 132, 137, 82 S.E.2d 603, 606 (1954).

It is axiomatic that the Commonwealth must prove beyond a reasonable doubt all elements of the crimes for which Wilkins was convicted. See Williams v. Commonwealth, 14 Va. App. 666, 418 S.E.2d 346 (1992); Martin v. Commonwealth, 13 Va. App. 524, 414 S.E.2d 401 (1992). A person is guilty of statutory burglary if during the daytime he breaks and enters a dwelling house of another "with intent to commit larceny" therein. Code § 18.2-91. A person is guilty of larceny if he takes and carries away the personal property of another, without his

entitled to consider the evidence of a common scheme or plan in evaluation of each offense in reaching its verdict. Spencer v. Commonwealth, 240 Va. 78, 393 S.E.2d 609 (1990).

- 4 -

consent, with the intent to permanently deprive. <u>Cullen v. Commonwealth</u>, 13 Va. App. 182, 186, 409 S.E.2d 487, 489 (1991). The Code further defines grand larceny as "simple larceny not from the person of another of goods and chattels of the value of $200 or more," or "simple larceny not from the person of another of any firearm, regardless of the firearm's value." Code § 18.2-95.

Wilkins concedes on appeal that he was present at two of the four burglaries for which he was convicted. Specifically, he admits to being present at the Simmonses' home and the Bryants' home while the burglaries occurred. In those two burglaries, the perpetrators ransacked the master bedroom and targeted jewelry and electronics. In addition, at the Bryants' home, he kicked in their front door to gain entry. At the O'Bryant and Nixon homes, a door was kicked in, the master bedroom ransacked, and jewelry and electronics were stolen. The perpetrators also stole banking envelopes from the O'Bryants' house that were found at the Nixons' house; on four of the seven banking envelopes, usable fingerprints were found to match Wilkins' fingerprints. Moreover, all of the crimes occurred within nine hours and twenty miles of each other in rural Southampton County.

In addition, Wilkins stated that at the second house they burglarized, which he thought was the Bryants' house, he observed one of the other burglars place a brown holster in the car and he heard that burglar say that he "got some fire, . . . meaning a gun." The Bryants' home was the only home from which a firearm in a brown holster was stolen on that day. While explaining what happened at the Bryants' house, Wilkins stated "Garnett got out, ran to the back door. Trey ran behind him. I did not get out of the car." In fact, the Bryants' front door was kicked in and the back door was left alone. However, the O'Bryants' back door was kicked in. The O'Bryants live a mere two miles from the Simmonses on the same road and were the only victims whose back door had been kicked in.

Despite all of the foregoing facts, Wilkins argues that the evidence is insufficient to prove that he participated in the burglary[4] of the O'Bryants' home and the Nixons' home. First, Wilkins argues that the bank envelopes found at the Nixons' home "were never actually tied to the" O'Bryants' home. Second, he argues that simply finding his fingerprints outside of the Nixons' home is not sufficient to prove that he was there at the time of the crime.

With respect to Wilkins' first argument, the trial court found that the documents recovered from the Nixon home were, in fact, the documents stolen from the O'Bryants' home. On appeal, we will not set aside a factual finding "unless it is 'plainly wrong or without evidence to support it.'" DiMaio v. Commonwealth, 46 Va. App. 755, 763, 621 S.E.2d 696, 700 (2005) (quoting Riner v. Commonwealth, 268 Va. 296, 320, 601 S.E.2d 555, 568 (2004)). Mr. O'Bryant testified that F&M, BB&T, and BSV envelopes were stolen from his safe in his master bedroom on January 19. On the same day, Mr. Nixon and Detective Ricks both testified that a sock, filled with envelopes from F&M, BB&T, and BSV, was found off the side of the Nixons' driveway. A trier of fact may "draw reasonable inferences from basic facts to ultimate facts," Haskins v. Commonwealth, 44 Va. App. 1, 10, 602 S.E.2d 402, 406 (2004) (internal quotation marks and citations omitted), unless doing so would push "into the realm of *non sequitur*," Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006) (internal

---

[4] It is not necessary for the Commonwealth to prove that Wilkins actually committed the burglary or the grand larceny. A principal in the second degree is equally guilty as a principal in the first degree. Code § 18.2-18; Brown v. Commonwealth, 130 Va. 733, 736, 107 S.E. 809, 810 (1921). In order to prove that Wilkins is guilty as a principal in the second degree, the Commonwealth must prove that he was present and he in some way "procured, encouraged, countenanced, or approved commission of the crime." Augustine v. Commonwealth, 226 Va. 120, 124, 306 S.E.2d 886, 888 (1983). Wilkins testified that he did not know that he was with individuals who were planning to commit burglaries. He also stated that once he discovered what was going on, he left and got in the car. However, because the trial court found him guilty of all eight counts, we can presume that the trial court discarded this evidence as incredible. Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977) ("Absent clear evidence to the contrary in the record, the judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the facts.").

quotation marks and citations omitted). Here, we hold that the evidence supports a reasonable inference that the envelopes found at the Nixons' house were the envelopes stolen from the O'Bryants' home and we will not disturb the trial court's finding of fact on appeal.

Wilkins' second argument is similarly unpersuasive. "A latent fingerprint found at the scene of the crime, shown to be that of an accused, tends to show that he was at the scene of the crime." Avent v. Commonwealth, 209 Va. 474, 479-80, 164 S.E.2d 655, 659 (1968). While Wilkins concedes this point of law, he argues that there are no attendant circumstances that show he was at the scene of the crime when the crime was committed. We agree with Wilkins that fingerprint evidence must be "coupled only with evidence of other circumstances *tending to reasonably* exclude the hypothesis that the print was impressed at a time other than that of the crime." Id. at 480, 164 S.E.2d at 659 (emphasis in original). However, our Supreme Court has explained that this rule does not require the Commonwealth to "affirmatively and conclusively prove that the accused could not have been there other than [at the] time when the crime was committed." Id. Rather, the Commonwealth must simply prove circumstances that support a rational inference that Wilkins was there at the time of the offense. We conclude that the Commonwealth has met this burden.

It is clear from Wilkins' statements that he was present at the scene of at least two burglaries on the day in question. Detective Ricks confronted Wilkins saying, "Tywone, I know you were involved in the B&E in Southampton County." Wilkins immediately responded, "I went with the boys only one day." Wilkins further stated that he was aware that "about seven or eight people" were "involved in the B&E," but he clarified that "only four of *us* went the day I went." (Emphasis added). Detective Ricks asked Wilkins what time the burglaries occurred and Wilkins estimated that "it might have been twelve noon."

After Wilkins made these incriminating statements, Detective Ricks and Lieutenant Modlin drove Wilkins to the four houses that were burglarized and Wilkins admitted to entering the Simmonses' house. He further stated that the Bryants' house "looked familiar." Before taking the trip to identify the victims' homes, Wilkins stated that the second home that they burglarized was on a "dirt road." The Bryants' home is located on a dirt road. Thus, the direct evidence in this case is sufficient to convict Wilkins beyond a reasonable doubt of at least two of the four burglaries.

Further, as the trial court correctly noted, the corroborating circumstances that established that Wilkins' fingerprints were left at the time the burglaries occurred included the similarity of the crimes, the proximity of the crimes to each other, and the period of time in which the crimes occurred. Where the perpetrator's identity or criminal agency is disputed, as it is here, "[p]roof of *modus operandi* is competent evidence," Spencer v. Commonwealth, 240 Va. 78, 89, 393 S.E.2d 609, 616 (1990), and is admissible to prove the "probability of a common perpetrator,"[5] Turner v. Commonwealth, 259 Va. 645, 651, 529 S.E.2d 787, 791 (2000). In fact, our Supreme Court has stated that *modus operandi* evidence supplies an "important link with the scientific evidence . . . tending to prove the identity of the perpetrator." Spencer, 240 Va. at 91, 393 S.E.2d at 617.

---

[5] As discussed above, Wilkins was tried for all eight counts during one bench trial. It is important to note that Wilkins did not object to the admissibility of evidence of other crimes as substantive proof that he committed each burglary. Furthermore, Wilkins did not request a limited ruling wherein the trial court must view the evidence for each individual crime in isolation. Thus, we evaluate the weight, not the admissibility, of the evidence. Because he was tried for all eight counts at once and he did not object to the admissibility of the evidence of other crimes, his actions during one burglary are admissible and relevant to prove that he committed the other burglaries. Charles E. Friend, The Law of Evidence in Virginia § 12-10, at 467 (6th ed. 2004). Therefore, the similarity in the several burglaries for which Wilkins was convicted is a circumstance that tends to support an inference that Wilkins was a participant in all four burglaries.

Here, Wilkins claims there are no circumstances that support a rational inference that he was at the scene of the crime during the crime. However, the similarity of the burglaries is relevant circumstantial evidence that tends to show that Wilkins is the criminal agent. In this case, the breaking and entering occurred by the same means each time, the same type of personal property was stolen, the same room in each house was the target of the burglary (i.e. the master bedroom), and in each location dresser drawers were dumped. These facts are sufficiently similar to support a rational inference that the same person committed the burglaries. Each individual fact, if isolated, does not itself prove that Wilkins is guilty of each burglary. However, taken together as a whole, the fingerprint evidence, Wilkins' statements to the police, the short period of time in which the burglaries occurred, the short distance in which the burglaries occurred, and the similarities in the various offenses can support the trial court's ruling that Wilkins was a common perpetrator. Viewing the direct and circumstantial evidence in the light most favorable to the Commonwealth, we hold that the trial court could reasonably infer that the same person committed the crimes. Therefore, we find that the evidence was sufficient to support a "rational inference, consistent with the rule of law both as to fingerprints and circumstantial evidence, that [Wilkins] was the criminal agent." Avent, 209 Va. at 480, 164 S.E.2d at 659. Thus, we cannot say that the trial court's decision in this case was plainly wrong or without evidence to support it.

III. CONCLUSION

For the foregoing reasons, we affirm Wilkins' convictions.

Affirmed.