# CIRCUIT COURT OF FAIRFAX COUNTY

Commonwealth of Virginia

v.

Dirie Ali Isse

June 29, 2010

Case Nos. FE-2009-1941, FE-2009-2056

BY JUDGE MICHAEL F. DEVINE

Defendant Dirie Ali Isse was indicted by a grand jury on November 16, 2009, on two counts of felony possession of a controlled substance pursuant to Virginia Code § 18.2-250(A). The two above-captioned cases are before the Court on the Defendant's Motion to Exclude Certificate of Analysis as Based on Scientifically Unreliable Evidence. The motion seeks to exclude from evidence at trial the chemical analyses performed on the suspected controlled substance, cathinone, on the basis that the general method used to identify the substance is scientifically unreliable and thus inadmissible under *Spencer v. Commonwealth*, 240 Va. 78, 393 S.E.2d 609 (1990). Defendant also seeks to exclude this evidence on the ground that the actual tests performed in these cases deviated from a reliable method of analysis. That claim is the subject of a separate motion and is not addressed here. After conducting a hearing on April 16, 2010, the Court took this matter under advisement. After full consideration of the applicable governing authorities, the relevant evidence, and the parties' oral and written arguments, the Court now finds that the general method of

analysis employed here is reliable, and thus the Defendant's motion is denied.

## I. Background

To identify the suspected controlled substances, the chemists performing the tests used a gas chromatograph ("GC") equipped with two separate detectors, a mass spectrometer ("MS") and a flame ionization detector ("FID"). A thin-layer chromatography (TLC) test was conducted first. The TLC test results are used as a screening tool to determine if gas chromatograph testing is warranted. Each detector produced graphic results that each chemist visually compared to those produced by testing a known sample of cathinone on the same equipment and under the same laboratory conditions. The Defendant argues that this method of identification, visual comparison of the graphic test results of the known and suspected samples, is unreliable because the chemist failed to perform a computer-assisted search of a database containing the graphic results for tens of thousands of compounds.

## II. Analysis

"When scientific evidence is offered, the court must make a threshold finding of fact with respect to the reliability of the scientific method offered, unless it is of a kind so familiar and accepted as to require no foundation to establish the fundamental reliability of the system, such as fingerprint analysis." *Spencer v. Commonwealth*, 240 Va. at 97, 393 S.E.2d at 621 (citing *Avent v. Commonwealth*, 209 Va. 474, 478, 164 S.E.2d 655, 658 (1968)). The threshold determination that a trial court must make is "whether the evidence is so inherently unreliable that a lay jury must be shielded from it, or whether it is of such character that the jury may safely be left to determine credibility for itself." *Id.* at 97-98, 393 S.E.2d at 621.

The Virginia cases do not identify any particular factors to be considered when determining whether scientific evidence is so unreliable that it should not be admitted. The Supreme Court of Virginia has rejected the "Frye test," which requires evidence of general acceptance by the relevant scientific community. *Spencer v. Commonwealth*, 238 Va. 563, 573, n. 5, 385 S.E.2d 850, 856, n. 5 (1989); *O'Dell v. Commonwealth*, 234 Va. 672, 696, 364 S.E.2d 491, 504 (1988), *cert. denied*, 488 U.S. 871, 109 S. Ct. 186, 102 L. Ed. 2d 154 (1988): Likewise, the Court has neither

adopted nor rejected the analysis of *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). *John v. Im*, 263 Va. 315, 322, 559 S.E.2d 694, 697-98 (2002). *Daubert* and Federal Rules of Evidence ("FRE") 104 and 702 require that the proponent of scientific evidence prove by a preponderance of the evidence that the testimony is the product of reliable principles and methods. *See Daubert*, 509 U.S. at 593, n. 10, *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) ("The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable."). Rather, the Virginia standard bars only evidence that is "inherently unreliable," and thus arguably sets a lower threshold for the admission of scientific evidence. However, even if the Virginia standard requires the same showing as that under *Daubert*, the scientific evidence in this case is admissible because the method is reliable.

*Daubert* identified five non-exclusive factors to be considered when evaluating the reliability of scientific evidence: (1) whether the particular scientific theory "can be (and has been) tested"; (2) whether the theory "has been subjected to peer review and publication"; (3) the "known or potential rate of error"; (4) the "existence and maintenance of standards controlling the technique's operation"; and (5) whether the technique has achieved "general acceptance" in the relevant scientific or expert community. *Daubert*, 509 U.S. at 593-94. Rather than providing a definitive or exhaustive list, *Daubert* merely illustrates the types of factors that will "bear on the inquiry." *Id.* Indeed, as the *Daubert* Court emphasized, the analysis must be "a flexible one." *Id.; see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141-42, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) (concluding that the test of reliability is flexible and that *Daubert*'s five factors neither necessarily nor exclusively apply to every expert).

During the evidentiary hearing on the Defendant's motion, John Griffin, Director of the Department of Forensic Science Northern Laboratory offered the following testimony regarding the visual comparison of test results:

(1) Visual comparison of the MS and FID graphic results is an accepted method in the field of chemical identification;

(2) Written criteria exist governing data interpretation and acceptance in identifying a substance;

(3) Chemists who test controlled substances are proficiency-tested annually;

(4) The chemist's use of two independent detectors to examine each sample would disclose any inconsistencies between the results;

(5) The chemist additionally compares the mass to charge ratios and retention times to look for consistency between the suspected and known samples; and

(6) Chemist's notes and data are reviewed by a peer in the lab who must make the same identification based on the same test results. In the event of a disagreement regarding the interpretation of the results, the matter is referred to a supervisor.

The Defendant presented the testimony of Randolph Kenneth Larsen, III, Ph. D., an associate professor of chemistry at St. Mary's College of Maryland, who was recognized as an expert in the field of physical chemistry. Dr. Larsen testified about the existence of vast printed and electronically searchable databases of mass spectra for hundreds of thousands of compounds that can be used to compare and identify results from unknown substances. A computer search of these databases produces various likelihoods of matches of suspected compounds to known compounds. Dr. Larsen also testified, however, that using a database is discretionary and that he does not always run his test results against a database of known results. The Defendant did not offer any testimony that the trained human eye is incapable of detecting the differences in the graphic results of different, albeit similar, chemical compounds.

There was testimony that, over time, cathinone, which is a Schedule I controlled substance, converts to cathine, a Schedule IV controlled substance. *See* Va. Code §§ 54.1-3446, 54.1-3452. There was no testimony as to the chemical similarity between these two compounds or that the graphic test results for these compounds could not be distinguished by visual comparison.

Thus, Defendant's claim of unreliability is based entirely upon the existence of an alternative method of identification that he claims is superior to the method used to identify the suspected controlled substances in these cases. However, the existence of a competing method of scientific analysis does not render other methods unreliable or inadmissible, as neither Virginia law nor *Daubert* require universal agreement about the reliability of a particular method of analysis. As the committee notes to the 2000 amendments to FRE 702 state:

> When a trial court, applying this amendment, rules that an expert's testimony is reliable, this does not necessarily mean that contradictory expert testimony is unreliable. The

amendment is broad enough to permit testimony that is the product of competing principles or methods in the same field of expertise. *See, e.g., Heller v. Shaw Industries, Inc.*, 167 F.3d 146, 160 (3d Cir. 1999) (expert testimony cannot be excluded simply because the expert uses one test rather than another, when both tests are accepted in the field and both reach reliable results). ... *See also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995) (scientific experts might be permitted to testify if they could show that the methods they used were also employed by "a recognized minority of scientists in their field."); *Ruiz-Troche v. Pepsi Cola*, 161 F.3d 77, 85 (1st Cir. 1998) (*"Daubert* neither requires nor empowers trial courts to determine which of several competing scientific theories has the best provenance.").

Fed. R. Evid. 702, advisory comm. notes (2000).

Virginia law likewise provides that the jury should resolve most disputes concerning the reliability of scientific evidence. Where the court determines that there is a sufficient foundation to warrant admission of disputed scientific evidence, the court may, in its discretion, admit the evidence with appropriate instructions to the jury to consider the disputed reliability of the evidence in determining its credibility and weight. *Spencer*, 240 Va. at 97-98, 393 S.E.2d at 621. Indeed, "if scientific unanimity of opinion were necessary, very little scientific evidence, old or new, could be used." *Id.*

The existence of an alternative method of analysis than that used in this case does not render the Certificate of Analysis inadmissible. The Court thus finds, based on the record before it, that the general method employed for identifying the controlled substances is sufficiently reliable to warrant admission of the test results at trial. While the Defendant may challenge the reliability of that evidence at trial, the trier of fact shall make that ultimate determination. Therefore, the motion to exclude the certificates of analysis is denied.

### III. Conclusion

As the Court finds that the method of analysis performed by the chemist in this case is sufficiently reliable under Virginia law, the

498

Defendant's Motion to Exclude Certificate of Analysis as Based on Scientifically Unreliable Evidence is hereby denied.