COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Kelsey and Haley
Argued by teleconference


WILLIAM BOYD SWINSON
                                                        MEMORANDUM OPINION[*] BY
v.        Record No. 2411-09-2                           JUDGE ROBERT P. FRANK
                                                              AUGUST 3, 2010
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Timothy J. Hauler, Judge[1]

Sharon A. Fitzgerald (Sharon A. Fitzgerald, LLC, on brief), for
appellant.

Erin M. Kulpa, Assistant Attorney General (Kenneth T. Cuccinelli,
II, Attorney General, on brief), for appellee.


William Boyd Swinson, appellant, was convicted, in a bench trial, of two counts of robbery,

in violation of Code § 18.2-58; one count of statutory burglary, in violation of Code § 18.2-90; and

three counts of use of a firearm in the commission of the above felonies, in violation of

Code § 18.2-53.1.  On appeal, he challenges the sufficiency of the evidence.  For the reasons stated,

we affirm the trial court.

BACKGROUND

Applying well-established principles of appellate review, we will state the evidence in the

light most favorable to the Commonwealth, the prevailing party in the circuit court.  McMillan v.

Commonwealth, 277 Va. 11, 15, 671 S.E.2d 396, 399 (2009).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The Honorable Timothy J. Hauler presided over the sentencing hearing and entered the
final sentencing order.  The Honorable William R. Shelton, Judge Designate, entered the
conviction order and presided over the proceedings addressed in this opinion.

On April 8, 2008, at approximately 11:00 a.m., appellant's sister arrived at the home of her landlords, the victims, C.W. and R.W., to pay her monthly rent in cash. When the sister left the victims' home, she stopped at appellant's home, a duplex at 6144 Strathmore Road, a short distance from the victims' home. The sister told appellant's wife that she had just paid her rent to the victims. During this conversation, appellant was somewhere in the house. The sister routinely paid in cash and placed the money on the victims' kitchen table.

About ten to fifteen minutes after the sister left the victims' house, C.W. was sitting in the kitchen with his wallet, several credit cards, and a portable phone on the kitchen table. Suddenly, a man burst through the back screen door into the kitchen. C.W. described the man as a "[s]hort and stumpy" white male, in his forties, and wearing a hooded sweatshirt with the hood pulled up. His face was not covered. Neither victim ever identified appellant as the intruder. Later, R.W. identified another individual as the gunman but he was later dismissed as a suspect. R.W., in a subsequent television interview, described the intruder as "a man in his 20's with a hooded sweatshirt." The victims had never seen the intruder before. At trial, C.W. testified that only those people familiar with the couple would know that they did not use the front door and that they normally asked visitors to come to the back door.

The intruder pointed a black pistol at R.W.'s chest, telling her that he wanted their "money." The gunman first looked at the kitchen table. When the victims told the gunman that they did not have any money, he demanded R.W.'s purse.

The intruder, pointing his gun at C.W., took C.W.'s wallet, credit cards, and a phone from the table. He then followed R.W. through the house as she looked for her purse. After finding R.W.'s black purse, and taking a cell phone and a camera, the gunman walked into the yard with the stolen items. He stopped to look through the purse and then walked towards Strathmore Road. R.W. called 911, then followed the intruder in her automobile.

Police Officer Encinas arrived at the victims' home less than one minute after receiving the report of the robbery. C.W. pointed him in the direction that the gunman and his wife had gone. Officer Encinas located R.W., who directed the officer's attention to a white male, approximately three hundred feet away, wearing a blue hooded sweatshirt and blue sweatpants. The suspect was climbing an embankment to scale a fence behind the Strathmore residences. The gunman was less than one-tenth of a mile from the victims' home. The officer made no facial identification.

The suspect scaled the fence, carrying a gun in his right hand. After he cleared the fence, the gunman bent over and did "something in the leaves with his hands." Officer Encinas noticed that when the gunman stood up he no longer had a gun in his hand but he was still carrying a black purse. The gunman walked away towards the brick duplexes on Strathmore Road. Officer Encinas described the man he saw jumping over the fence as a "heavyset" "white male," wearing a hooded sweatshirt with the hood up.[2]

Officer Encinas lost sight of the gunman. A K-9 unit arrived and tracked the scent from the point where the gunman jumped over the fence. The tracking dog led police to an area less than two feet from where Officer Encinas had seen the gunman crouched down. There, in the backyard of the brick duplex house at 6144 Strathmore Road, appellant's residence, officers recovered C.W.'s credit cards, his home phone, and a black BB gun. The tracking dog continued to follow the scent for another fifty yards. The last location where the dog was able to follow the scent was in appellant's backyard.

C.W. identified the black BB gun recovered from appellant's backyard as "similar" to the weapon displayed during the robbery. He also identified the recovered credit cards, camera, and cell phone as those taken during the robbery. Appellant's DNA was found on the BB gun.

---

[2] The police briefly detained a different suspect, not appellant, in the general vicinity, who was later released.

Appellant denied any involvement in the robbery. No fingerprint evidence implicated appellant in the offenses. A search of appellant's residence six months after the incident revealed no items stolen from the victims.

Appellant was convicted of two counts of robbery, statutory burglary, and three counts of use of a firearm in the commission of a felony.

This appeal follows.

ANALYSIS

Appellant's challenge to the sufficiency of the evidence is limited to whether he was the perpetrator, not whether the offenses occurred.

When considering a challenge that the evidence presented at trial is insufficient, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002). We do not "substitute our judgment for that of the trier of fact." Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rationale trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id.

The thrust of appellant's sufficiency argument is that neither of the victims identified him as the gunman. Appellant further points to R.W.'s misidentification of a suspect, and the inaccurate description of the perpetrator given by both victims.

We agree that there was no direct evidence identifying appellant as the gunman, but appellant's argument ignores the circumstantial evidence adduced by the Commonwealth.

"Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). However, "[t]he Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993).

Although, "a factfinder cannot arbitrarily disregard a reasonable hypothesis of innocence," Cooper v. Commonwealth, 54 Va. App. 558, 573, 680 S.E.2d 361, 368 (2009), "[w]hether the hypothesis of innocence is reasonable is itself a 'question of fact,'" Clanton v. Commonwealth, 53 Va. App. 561, 572, 673 S.E.2d 904, 910 (2009) (citations omitted). "Merely because defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded." Miles v. Commonwealth, 205 Va. 462, 467, 138 S.E.2d 22, 27 (1964). Thus, the factfinders in this case could only be overturned if "no rational factfinder would have come to that conclusion." Haskins v. Commonwealth, 44 Va. App. 1, 9, 602 S.E.2d 402, 406 (2004).

We first note that R.W.'s misidentification of another suspect, and any inaccurate description of the intruder, concerns the credibility of the witnesses and the weight afforded the victim's testimony. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). See Peterson v. Commonwealth, 225 Va. 289, 295, 302 S.E.2d 520, 524 (1983) (stating that the credibility of witnesses and the weight to be given identification testimony is a matter for the jury).

- 5 -

We review the facts "in the light most favorable to the Commonwealth, giving it the benefit of any reasonable inferences." Glenn v. Commonwealth, 49 Va. App. 413, 416, 642 S.E.2d 282, 283 (2007) (*en banc*) (citation omitted), aff'd, 275 Va. 123, 654 S.E.2d 910 (2008). This standard requires us to "give due weight to inferences drawn from those facts by resident judges . . . ." Malbrough v. Commonwealth, 275 Va. 163, 169, 655 S.E.2d 1, 3 (2008) (citation omitted).

It was reasonable for the fact finder to conclude the intruder knew the victims' habits. He entered the back door, indicating he was aware of the victims' pattern of using the back door as the sole entry point. When the perpetrator entered and demanded money, he first looked at the kitchen table, where appellant's sister routinely deposited her rent money. It can further be inferred that appellant knew that the victims had recently received cash from appellant's sister. The intruder broke into the victims' home between ten and fifteen minutes after appellant's sister left the house and told appellant's wife that she had just paid her rent. Appellant was present somewhere in the house when that statement was made. The intruder did not look for jewelry or other valuables, only cash, indicating the intruder knew cash was on the premises.

After the robbery, the intruder ran towards appellant's house and discarded some of the stolen items, including the gun used in the robbery, in appellant's backyard. Appellant's DNA was found on the BB gun. While there was testimony appellant's stepson owned a toy gun, there was no testimony the black BB gun was the one owned by the stepson. It must be remembered that a "similar" gun was seen in the hands of the gunman just moments before the police recovered it on the ground.

The fact finder rejected appellant's explanation of why his DNA was found on the gun. DNA evidence clearly indicates at some point in time, appellant had touched the BB gun. Other evidence proved that the gunman had a gun of like appearance in his possession just moments before the gun was discovered in appellant's backyard. This additional evidence tends to

- 6 -

reasonably exclude appellant's hypothesis that the DNA was deposited on the gun at a time other than that of the crime.  See Avent v. Commonwealth, 209 Va. 474, 481, 164 S.E.2d 655, 659 (1968) (discussing that fingerprint evidence was sufficient to convict when "coupled with evidence of other circumstances which tended to reasonably exclude the hypothesis that the print was impressed at a time other than that of the crime").

From the intruder's entry into victims' residence, until the gun and stolen items were found in appellant's backyard, there had been an unbroken sequence pointing to appellant as the gunman.  R.W. followed the intruder as he left the house.  She pointed out the gunman to the officer who followed the gunman over the embankment and fence.  He saw the gunman reach into a pile of leaves where the weapon and stolen items were recovered.

We therefore conclude that the trial court did not err in finding the circumstantial evidence sufficient to convict appellant of the crimes charged.

Affirmed.