# CIRCUIT COURT OF AUGUSTA COUNTY

Commonwealth of Virginia

    v.

Paul Lenwill Cupp

July 16, 2012

Case No. CR 12000085-00

By Judge Victor V. Ludwig

I believe that I largely made clear the Court's decision regarding the various issues which were argued on July 11, 2012.

With respect to the Motion for a *Spencer* Hearing, the Court finds that the scientific methodology of the analysis used to determine the common characteristics of the material found at the crime scene and the material found in the defendant's home and vehicle meet the standards described in *Spencer v. Commonwealth*, 248 Va. 73 (1991).

> When scientific evidence is offered, the court must make a threshold finding of fact with respect to the reliability of the scientific method offered, unless it is of a kind so familiar and accepted as to require no foundation to establish the fundamental reliability of the system, such as fingerprint analysis, *Avent v. Commonwealth*, 209 Va. 474, 478, 164 S.E.2d 655, 658 (1968); or unless it is so unreliable that the considerations requiring its exclusion have ripened into rules of law, such as "lie-detector" tests, *Robinson v. Commonwealth*, 231 Va. 142, 156, 341 S.E.2d 159, 167 (1986); or unless its admission is regulated by statute, such as blood-alcohol test results, Code §§ 18.2-268(O), -268(Y). In making the threshold finding of fact, the court must usually rely on expert testimony.

*Id.* at 91. Even applying the more stringent or more detailed analyses of *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), or *Daubert v. Merrell*

*Dow*, 509 U.S. 579 (1993), neither of which is binding on or required of this Court, the evidence is admissible. In this case there was ample evidence from the expert, Amy Wimer, addressing whether the techniques can be tested, whether they are subject to peer review and analysis, and whether they are generally accepted in the industry, and Ms. Wimer testified that they were accepted both in the textile industry as a whole and in the forensic community as a valid means of analysis. Moreover, even without Ms. Wimer's testimony, it is a matter of common knowledge that the tests she used to analyze the materials are broadly used, carefully documented in journals and learned treatises, and generally accepted as the methods used, not only for forensic analysis but a means of quality control in the industry. To be sure, Ms. Wimer was not able to testify with certainty the "known or potential rate of error" in the particular techniques, but the Court (and perhaps Ms. Wimer) was not clear as to whether the question asked by Mr. Judy addressed the potential error in this case or error as a general rule. If the former, the question was not relevant to the *Spencer* inquiry; if the latter, the mere fact that the techniques and tests are of such common currency in the industry attests at least to their perceived reliability.

I acknowledge that the evidence from Chad Shenum regarding the analysis revealing the presence of oils and petroleum in the swatch of material argued by the Commonwealth to be the wick of the incendiary device was less precise or comprehensive than Ms. Wimer's, but the objection to that evidence was less vigorous. In any event, the Court found that that evidence, too, met the *Spencer* test.

With respect to the Motion *in Limine* regarding the introduction of the defendant's statements regarding his prior convictions (or, more generally, his prior bad acts), the Court found that the statements were not evidence of a *modus operandi*. In analyzing that issue, the Court in *Spencer* held:

> We adopt the standard articulated by the Seventh Circuit in *United States v. Hudson*, 884 F.2d 1016 (7th Cir. 1989): evidence of other crimes, to qualify for admission as proof of *modus operandi*, need not bear such an exact resemblance to the crime on trial as to constitute a "signature." Rather, it is sufficient if the other crimes bear "a singular strong resemblance to the pattern of the offense charged." 884 F.2d at 1021 (quoting *United States v. Shackleford*, 738 F.2d 776, 783 (7th Cir. 1984)). That test is met where the other incidents are "sufficiently idiosyncratic to permit an inference of pattern for purposes of proof," *id.*, thus tending to establish the probability of a common perpetrator.

*Id.* at 90. Although there were some similarities, the similarities between the crime before this court and the defendant's other crimes did not present

a strong resemblance or pattern. Indeed, were the Court to accept them as sufficient for a finding of *modus operandi*, there would be very few instances in which prior bad acts would not qualify as such and the rule regarding their limited admissibility would be consumed by the exception. That is a road less travelled which should remain so.

However, the statements which the defendant made were party admissions, and they can be admitted as such. Typically the issue regarding prior crimes or bad acts does not arise when a defendant opens the door with his voluntary admissions during an interview with law enforcement authorities, and there is obviously a tension between excluding evidence of prior bad acts and admitting evidence of statements freely offered by the defendant.

There is precedent (but only one that I could find) that authorizes the admission of a defendant's statement of prior crimes, and that is *Quintana v. Commonwealth*, 224 Va. 127 (1982). In that case, Quintana, while incarcerated, made statements to another inmate regarding his past criminal activities. Although apparently the evidence was not admitted during the guilt-phase of the trial, the trial court did admit, during the sentencing phase, evidence that Quintana had said that he had, *inter alia*, killed a man in Cuba by cutting his throat. Quintana objected on the ground of hearsay (curiously), and the Supreme Court held (curiously) that:

> Defendant's utterances to Castro were prior extra-judicial declarations freely made by a party to the criminal trial, and they were inconsistent with defendant's position at trial, *i.e.* that his prior history failed to show he had the propensity to commit future criminal acts. Consequently, the statements were properly received under the party admissions exception to the hearsay rule.

*Id.* at 148. I am reluctant to rely on the holding in *Quintana* for a number of reasons. First, it does not appear to me that the defendant made the same objection as that raised by the defendant in this case. (A pure hearsay objection is different from invoking the rule against the admission of prior bad acts.) Second, the evidence was admitted clearly for the purpose of rebutting the defendant's evidence regarding his prior history. Finally, were the rule that a defendant's voluntary statement regarding his prior criminal activities (not admissible as *modus operandi* but as a party admission) were generally admissible in the Commonwealth's case-in-chief in the guilt phase, the result likely would be to encourage police officers, as a general rule, to inquire about a defendant's prior criminal activities, opening a route though which the hitherto inadmissible evidence would become admissible in every case.

Even so, the Court will not simply ignore the rule of party admissions and will permit evidence of the defendant's statements, excepting the references to prior criminal acts *qua* criminal acts. For example, although I acknowledged that I was not certain that I had heard correctly, I said that I thought he had told the Special Agents that he "liked fires," and I know that he said that he had constructed incendiary devices using plastic two-liter Pepsi bottles, that his choice of wick was an oil soaked rag stuffed in the neck of the bottle, that he propped it upside down, and that he remained in the area to see it ignite. Those comments, which might have been recreational activities and can be discussed out of the context of criminal or prior bad acts, are probative of the facts that the defendant has the knowledge and expertise to build an incendiary device, that he has done so in the past, and that he enjoyed watching fires.

I recognize that any editing of the video might present some challenges to the parties, but that is a problem which I leave to them, perhaps by using a transcript rather than the video itself. If there is a dispute as to how to limit the evidence, the Court will reluctantly address it with another, very short, hearing (reluctantly and short because we have already wasted an entire jury trial day on a seven-hour hearing which was as inefficiently used as I have ever seen or even nightmarishly dreamed possible). I think that I was reasonably clear as to the Court's holding as to this detail, and I would expect to resolve disputes with a meat ax rather than my usual surgical care.